**Donald E. KING, Sr., Plaintiff,**

v.

**JAMES RIVER–PEPPERELL, INC., et al., Defendants.**

**Civ. A. No. 84–898–C.**

United States District Court, D. Massachusetts.

Sept. 7, 1984.

---

Frederick T. Golder, Golder & Shubow, Boston, Mass., for plaintiff.

Terry Philip Segal, Boston, Mass., for defendant James River-Pepperell, Inc.

Nathan S. Paven, Quincy, Mass., James F. Norton, Quincy, Mass., for defendants United Paperworks Int'l Union AFL–CIO and its Local 534.

### MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action originally brought in the Superior Court for Middlesex County, Commonwealth of Massachusetts, and removed to this Court. Plaintiff Donald E. King, Sr., is a former employee of defendant James River-Pepperell, Inc. ("James River"), and a member of a collective bargaining unit represented by defendant United Paperworks International Union, AFL–CIO ("UPIU") and defendant UPIU Local No. 534 ("Local 534"). Plaintiff alleges, generally, that James River unlawfully discharged him to prevent him from qualifying for disability retirement benefits, and that the UPIU and Local 534 had breached their duty of fair representation.

Plaintiff's complaint contains four counts alleging, respectively, breach of contract, wrongful discharge, violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and unfair representation. On June 27, 1984, this Court allowed plaintiff's motion to dismiss Counts I and IV of the complaint voluntarily. Consequently, only Counts II and III remain against defendant James River, and no claims remain against UPIU and Local 534. The matter is presently before this Court on defendant James River's motion to dismiss or, in the alternative, for summary judgment.

A review of the record reveals the following facts. Plaintiff was hired by defendant in November 1966. On October 19, 1978, plaintiff was seriously injured in an industrial accident and never returned to work at James River. Plaintiff was subsequently determined to be totally and permanently disabled. Management personnel at James River were informed that in July 1981 plaintiff had been classified permanently disabled. On July 23, 1981, the personnel administrator at James River wrote a letter to plaintiff notifying him that he was no longer considered an employee of James River. On August 12, 1981, Local 534 filed a grievance on plaintiff's behalf, alleging that plaintiff had been unjustly terminated in violation of the collective bargaining agreement and asking that plaintiff be reinstated. On August 27, 1981, plaintiff settled the grievance in exchange for James River's agreement to pay certain hospital bills and to give plaintiff the opportunity to convert certain medical insurance. James River performed its obligations under the settlement agreement and the grievance was not taken to arbitration. No further grievances were filed.

In February 1984, plaintiff filed this lawsuit. Plaintiff's claims center on a provision of the collective bargaining agreement which states:

> 4.3—(a) In the event of the total and permanent disability of a Member who has not attained age 65 but has at least 15 years of Benefit Service, such Member shall be entitled to receive a Disability Retirement Allowance ... based upon the Member's Benefit Service to the date of his disability, without reduction because of early Retirement.

Plaintiff asserts here that defendant terminated him from his employment with James River four months prior to the vesting of his retirement plan for the sole purpose of depriving him of his pension benefits. Defendant denies that such considerations entered into their decision-making process. James River also denies that plaintiff would have been eligible for disability retirement benefits even had he not been terminated until after November 1981.

Plaintiff alleges that his discharge violated § 510 of ERISA, 29 U.S.C. § 1140, which makes it unlawful "for any person to discharge, fine, suspend, expel, discipline or discriminate against [an employee] ... for the purpose of interfering with the attainment of any right to which [the employee] may become entitled under [an employee benefit plan]." Plaintiff alleges that James River interfered with his contract right to a disability retirement allowance when it terminated his employment.

Although ERISA does not by its terms require an aggrieved employee to exhaust available administrative remedies, courts have uniformly required potential ERISA litigants to exhaust remedies provided under their pension plans before filing suit in Federal Court. *See, e.g., Kross v. Western Electric Co., Inc.,* 701 F.2d 1238, 1243–45 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980); *DeLisi v. United Parcel Service, Inc.,* 580 F.Supp. 1572, 1575–76 (W.D.Pa.1984). The Court of Appeals for the Ninth Circuit has described many of the considerations favoring application of the exhaustion doctrine to ERISA claims:

> [T]he institution of ... administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims

settlement; and to minimize the cost of claims settlement for all concerned. It would certainly be anomolous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used.

*Amato v. Bernard,* 618 F.2d at 567; *see also Kross v. Western Electric Co., Inc.,* 701 F.2d at 1244–45. Courts have likewise required litigants to exhaust grievance proceedings available under their collective bargaining agreements before suing in federal court under ERISA. *See, e.g., DeLisi v. United Parcel Service, Inc.,* 580 F.Supp. at 1575; *Michota v. Anheuser-Busch, Inc.,* 526 F.Supp. 299, 321 (D.N.J.1980). Moreover, a decision rendered by an independent arbitrator is res judicata as to suits brought later under ERISA. *See Mahan v. Reynolds Metals Co.,* 569 F.Supp. 482, 485–88 (E.D.Ark.1983).

In this case, plaintiff filed a grievance under the provisions of the collective bargaining agreement between UPIU and James River, alleging that he had been terminated in violation of the agreement. Through the grievance process, he sought to be reinstated as an employee of James River. Had the plaintiff pursued his rights under the grievance procedure, it is possible that he might have won reinstatement. However, the plaintiff abandoned his request for reinstatement and settled his grievance for money and an agreement that James River would allow him to convert his medical and life insurance coverage to a private insurer.

█ I rule that plaintiff's abandonment of the reinstatement request and subsequent settlement of the grievance at the administrative level bars suit in this Court under ERISA. Plaintiff had an opportunity to gain reinstatement through the grievance procedure, but compromised his claim. To allow plaintiff now to see identical relief in this Court would defeat ERISA's goal of achieving final resolution of employee grievances at the administrative level and

would increase unjustifiably the costs of settling the claim. For those reasons, I rule that James River's motion for summary judgment should be allowed as to Count III.

█ In Count II, plaintiff alleges that he was wrongfully terminated in violation of state law. Plaintiff invokes this Court's pendent jurisdiction over the state law claims. Because no federal cause of action remains to be decided by this Court, I decline to exercise the Court's pendent jurisdiction and rule that Count II should be dismissed without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Order accordingly.