Arthur TREADWELL, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.

Civ. A. No. 85–3589–C.

United States District Court, D. Massachusetts.

June 25, 1987.

Andrew D. Nebenzahl, Boston, Mass., for plaintiff.

William F. Joy, Robert P. Joy, Laurence J. Donoghue, Morgan, Brown & Joy, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action brought by plaintiff Arthur Treadwell against defendant John Hancock Mutual Life Insurance Company ("Hancock") and two of its supervisory employees, defendants Michael Gangemi and Paul Hahesy. Plaintiff's amended complaint asserts various causes of action based upon Hancock's discharge of plaintiff after 28 years of employment with Hancock. Count One is for breach of the implied covenant of good faith and fair dealing. Count Two is for age discrimination in violation of M.G.L. c. 151B, § 4 and M.G.L. c. 149, § 24A. In Count Three plaintiff alleges that defendant terminated him in order to deny him retirement benefits, in violation of the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., and in violation of Massachusetts public policy. Count Four is a claim for deceit. Plaintiff asserts a claim of promissory estoppel in Count Five. Count Six is for breach of contract. Counts Seven and Eight assert claims sounding in tort for negligent breach of a duty to the plaintiff. Count Nine is for tortious interference with advantageous business relations, and, finally, Count Ten is for age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. The matter is now before the court on defendants' motion to dismiss or for summary judgment on all ten counts of the amended complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

Briefly, the facts of the dispute, as alleged, are as follows. Plaintiff was hired for employment by Hancock in May 1956. Hancock provided plaintiff with an employee manual, which set forth procedures for employee evaluation, discipline, and termination of employment. In 1973, plaintiff's position was terminated, and he was transferred to the position of Analyst I in the Records Administration Division of the Corporate Consulting Department, under the supervision of defendant Michael Gangemi. Shortly after his transfer to Analyst I, plaintiff was told by Gangemi that plaintiff was not suited for the position. Gangemi represented to plaintiff that a job retraining program would be established to assist him in fulfilling his job responsibilities.

From 1973 to 1979 plaintiff's job performance was consistently rated as "Good." In 1980 he was evaluated as "Acceptable—the employee's performance meets minimal job requirements." In 1981 plaintiff's job functions were narrowed to just two aspects of the Analyst I position. Plaintiff received a "Needs Improvement" performance evaluation in 1983. The 1983 evaluation also represented that plaintiff would be provided with retraining, and then would be required to resume all functions of the Analyst I position. In January 1984, Hancock placed plaintiff on a six month probation. On or about March 3, 1984, plaintiff received a schedule for his retraining; the schedule indicated that the retraining period concluded that same day. Finally, on April 20, 1984, defendants Gangemi and Hahesy presented plaintiff with the opportunity to select an early retirement program, labeled Special Opportunity Assistance Program ("S.O.A.P."), recently developed by Hancock. Plaintiff alleges that Gangemi and Hahesy told him that his only alternative to acceptance of S.O.A.P. was immediate termination. Plaintiff accepted the S.O.A.P. severance arrangement and retired.

## I. Claim of Breach of Implied Covenant of Good Faith and Fair Dealing

In Count One plaintiff claims that Hancock's termination of his employment breached the implied covenant of good faith and fair dealing. Massachusetts recognizes this implied covenant in the at-will employment context. *Siles v. Travenol Laboratories, Inc.*, 13 Mass.App. 354, 358, 433 N.E.2d 103, *rev. denied*, 386 Mass. 1103, 440 N.E.2d 1176 (1982). This implied covenant supports an action for "bad faith" or "wrongful" termination of employment. *See Siles* 13 Mass.App. at 354, 358, 433 N.E.2d 103. An at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy. *DeRose v. Putnam Management Company*, 398 Mass. 205, 210, 496 N.E.2d 428 (1986). Plaintiff argues that defendant's firing of him breached a promise enforceable under the doctrine of promissory estoppel, and that such conduct constitutes a violation of public policy.

Plaintiff's definition of the term "public policy" is too broad. Since a promise enforceable by virtue of reliance "is a 'contract' and [is] enforceable pursuant to a 'traditional contract theory,'" *Loranger Construction Co. v. E.F. Hauserman, Co.*, 376 Mass. 757, 761, 384 N.E.2d 176 (1978), plaintiff's theory would turn a breach of contract into a violation of public policy. Certainly the term "public policy" as used in the wrongful discharge context will not stretch that far. *Cf. DeRose*, 398 Mass. 205, 496 N.E.2d 428 (affirming jury verdict that employer wrongfully discharged employee in violation of public policy for failing to implicate another employee at a criminal trial as directed by employer); *Petermann v. International Brotherhood of Teamsters, Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employer's termination of an employee because of the employee's refusal to commit perjury violated public policy). *See also Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception*, 96 Harv.L.Rev. 1931, 1936–37 (1983) ("courts

have found [the public policy violation] to apply to discharges including three broad categories of motives [:] 1. refusing to commit an unlawful act ... 2. performing an important public obligation ... 3. exercising a statutory right or privilege.").

In addition, even where an employer's termination of an employee violates public policy, there is no cause of action for wrongful discharge if a remedy is already available. *Melley v. Gillette Corporation*, 19 Mass.App. 511, 475 N.E.2d 1227 (1985), *aff'd*, 397 Mass. 1004, 491 N.E.2d 252 (1986). In *Melley* the Appeals Court stated that

"[t]he rationale for implying a private remedy under the 'public policy exception' to the traditional rule governing at-will employment contracts is that, unless a remedy is recognized, there is no way to vindicate such public policy."

*Id.* at 511–512, 475 N.E.2d 1227. Applying that principle, the court in *Melley* ruled that an employee claiming wrongful termination of employment on grounds of age discrimination has no cause of action separate from the already established comprehensive statutory remedial scheme for age discrimination. *Id.* at 512, 513, 475 N.E.2d 1227. In the present case plaintiff argues that the breach of a promise enforceable by virtue of the doctrine of promissory estoppel is the violation of public policy. As stated above, Massachusetts recognizes the enforceability of such promises as ordinary contracts. Plaintiff thus has an already established remedy, i.e. a cause of action for breach of contract. No new cause of action based on a theory of wrongful discharge need be created to remedy the alleged wrong. Consequently defendants' motion to dismiss Count One for failure to state a claim upon which relief may be granted should be allowed.

## II. Claim for Age Discrimination in Violation of State Law

In Count Two, plaintiff alleges that he was terminated because of his age, in violation of M.G.L. c. 151B, § 4; M.G.L. c. 149, § 24A,[1] and the public policy of the

---

1. Plaintiff has no civil remedy under M.G.L. c. 149, § 24A. *Johnson v. United States Steel Cor-*

Commonwealth. As to the public policy claims in Count Two, plaintiff argues that termination on the basis of age supports an action for wrongful discharge. The Supreme Judicial Court, however, recently affirmed an Appeals Court ruling that there is no cause of action for wrongful termination on the grounds of age discrimination apart from the procedures provided by M.G.L. c. 151B, § 4. *Melley v. Gillette Corporation,* 19 Mass.App. 511, 513, 475 N.E.2d 1227 (1985), *aff'd,* 397 Mass. 1004, 491 N.E.2d 252 (1986). Consequently, defendants' motion to dismiss for failure to state a claim upon which relief can be granted should be allowed as to the common law wrongful discharge claim in Count Two.

Defendants further argue that plaintiff's claim of age discrimination in employment in violation of M.G.L. c. 151B, § 4, must be dismissed for failure to file a timely charge of age discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). Plaintiff has not refuted this argument in its opposition memorandum. According to the language of c. 151B, § 5, "Any complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination." Thus, failure to file a timely charge of discrimination bars a party from bringing a c. 151B, § 5 discrimination action in court. *See also Ackerson v. Dennison Manufacturing Co.,* 624 F.Supp. 1148, 1150 (D.Mass.1986); *Rock v. Massachusetts Commission Against Discrimination,* 384 Mass. 198, 205–07, 424 N.E.2d 244 (1981). In paragraph 16 of the amended complaint, plaintiff alleges that on April 20, 1984 defendants told him that he must either accept Hancock's S.O.A.P. severance arrangement or be immediately terminated. Plaintiff alleges in paragraph 17 that as a result of this forced choice, he was coerced into accepting the S.O.A.P. According to the copy of plaintiff's charge of discrimina-

tion with the EEOC, which is attached to the affidavit of Robert P. Morris in support of defendants' motion, plaintiff was in fact terminated from his employment on April 20, 1984. Plaintiff's EEOC charge alleging age discrimination in violation of M.G.L. c. 151B was filed on February 14, 1985. Plaintiff thus failed to file a charge within the six month period required by M.G.L. c. 151B, § 5. Plaintiff's claims under c. 151B, § 4 in Count Two therefore should be dismissed.

### III. *Claim for Wrongful Denial of ERISA Pension Plan Benefits*

In Count Three, plaintiff alleges that defendants forced him to retire early in order to deny him retirement plan benefits. Hancock maintains a retirement plan for employees which is a pension benefit plan within the meaning of ERISA and which covered plaintiff during his employment at Hancock. Plaintiff states that the defendants knew he was only three years away from vesting under the retirement plan. Plaintiff claims that this conduct violates both the federal Employee Retirement Income Security Act ("ERISA") and Massachusetts public policy.

Plaintiff's claim for wrongful termination in Count Three is pre-empted by ERISA. ERISA "supersede[s] any and all State laws insofar as they may now or hereinafter relate to any employee benefit plan" covered by the Act. 29 U.S.C. § 1144(a). The pre-emption provisions of ERISA are "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Insurance Co. v. Dedeaux,* — U.S. —, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Plaintiff's state law wrongful discharge claim clearly relates to an employee benefit plan, and arises under the wrongful discharge provision contained in section 510 of ERISA.[2] Thus plaintiff's state law

*poration,* 348 Mass. 168, 169, 202 N.E.2d 816 (1964). This Court, acting *sua sponte,* therefore, shall dismiss this claim in Count Two.

**2.** Section 510 of ERISA, 29 U.S.C. § 1140, states in pertinent part:

It shall be unlawful for any person to discharge ... a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan....

claim in Count Three is pre-empted. *See Pilot Life Insurance,* 107 S.Ct. at 1552–1553; *Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987).

■ Defendants next move to dismiss the ERISA claims on the grounds that plaintiff failed to exhaust the remedies procedure provided by the Hancock pension plan. Plaintiff failed to file any claim under the plan's claim and appeal procedure. Plaintiff's ERISA claim is based upon section 510, 29 U.S.C. § 1140, which protects employees from an employer's interference with the employee's attainment of pension rights. Defendants argue that requiring plaintiff to exhaust his pension plan remedies for the alleged interference with plaintiff's pension rights will further the goal of efficient disposition of ERISA claims.

The circuits are split as to whether exhaustion of internal plan remedies is a prerequisite to bringing suit on an ERISA claim in federal court. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (White, J., dissenting). The Ninth and Third Circuits distinguish between plan-based claims and statute-based claims, and do not require exhaustion of intra-plan remedies for the latter. *Amaro v. Continental Can Co.,* 724 F.2d 747 (9th Cir.1984); *Zipf v. American Telephone and Telegraph Co.,* 799 F.2d 889 (3d Cir.1986). The Seventh and Eleventh Circuits, on the other hand, apply the exhaustion doctrine for both plan-based and statute-based claims. *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir. 1983); *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986).

Defendants support their position by pointing to the decision of this Court in *King v. James River-Pepperell, Inc.,* 592 F.Supp. 54, modified on other grounds, 593 F.Supp. 1344 (D.Mass.1984). In *King* this Court stated that courts uniformly applied the exhaustion doctrine to ERISA litigants. *Id.* at 55 (citing *Kross,* 701 F.2d 1238; *Amato v. Bernard,* 618 F.2d 559 (9th Cir.

1980)). *See also Worsowicz v. Nashua Corp.,* 612 F.Supp. 310, 314 (D.N.H.1985) (citing *King, supra* ). The shift in case law since the decision in *King,* however, warrants a reexamination of the exhaustion issue.

In *Amato,* 618 F.2d 559, the Ninth Circuit broadly endorsed application of the exhaustion doctrine to ERISA litigants. *Id.* at 566–68. Subsequent to *Amato,* however, the Ninth Circuit redefined its rule on the exhaustion doctrine in ERISA cases. *Amaro,* 724 F.2d 747. The court in *Amaro* explained *Amato* as requiring exhaustion of plan remedies only for contractual plan-based claims, such as a claim for benefits. *Id.* at 751. When the plaintiff's claims are statutory, such as a claim under section 510 of ERISA, the court in *Amaro* explained, exhaustion is not required. *Id.* at 751–752. The court reasoned that while a plan trustee or arbitrator may have expertise in interpreting the pension plan, the task of statutory interpretation is for the judiciary. *Id.* at 751. The Third Circuit joined the Ninth Circuit in not requiring exhaustion of plan remedies for statute-based ERISA claims. *Zipf v. American Telephone and Telegraph Co.,* 799 F.2d 889 (3rd Cir.1986). In supporting its ruling, the court in *Zipf* noted that in section 503 of ERISA Congress assigned to plan fiduciaries the primary responsibility for evaluating claims for benefits, but had not done so for ERISA statute-based claims. *Id.* at 892–93.

In *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983), the Seventh Circuit affirmed the district court's dismissal of an ERISA claim on the grounds of exhaustion. *Id.* at 1245. Although the court of appeals reviewed the district court for abuse of discretion, the court of appeals stated that "strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case." *Id.* at 1244.

Despite the language in *Kross* that exhaustion in ERISA cases is "mandatory," the Seventh Circuit has since indicated that *Kross* does not necessarily require application of the exhaustion doctrine in ERISA cases. *Dale v. Chicago Tribune Compa-*

*ny,* 797 F.2d 458 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). The court in *Dale* stated: "The rule in this Circuit is clear. The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the trial court." *Id.* at 466 (citing *Kross,* 701 F.2d 1238). In sum, the Seventh Circuit has strongly endorsed application of the exhaustion doctrine in ERISA cases, but has also committed that decision to the trial court's discretion.

The Eleventh Circuit in *Mason,* 763 F.2d 1219 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986), has ruled that exhaustion is required in all ERISA cases, and thus has joined the viewpoint expressed by the Seventh Circuit in *Kross.* The court in *Mason* acknowledged the split in the circuits on this issue, but found the reasons for exhaustion in plan-based claims applied as well to statute-based ERISA claims. *Id.* at 1227. The court explained that

> Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision-making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Id.*

After careful consideration of the competing views of requiring exhaustion for ERISA claims, this court agrees with the Ninth and Third Circuits in *Amaro* and *Zipf,* that there is a sensible distinction between plan-based and statute-based claims. A claim for benefits is a matter of contractual interpretation of a specific pension plan. Such a matter can be fruitfully left to a trustee or arbitrator charged with administration of that specific plan. A claim under section 510 of ERISA, on the other hand, seeks to vindicate a right afforded employees by Congress. Evaluation of such a claim will be a matter of statutory interpretation and application, and this is a matter most appropriate for judicial determination.[3] Thus, plaintiff is not required to exhaust pension plan remedies before bringing his section 510 action to court. Consequently, defendants' motion to dismiss the ERISA claim in Count Three should be denied.

## IV. *Claim for Deceit*

Count Four of the amended complaint is a claim of deceit. The elements of the tort of deceit are as follows:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation.

*Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority,* 357 Mass. 40, 44, 255 N.E.2d 793 (1970) (quoting Restatement of Torts § 525). In addition, in an action for deceit under Massachusetts law,

---

3. In addition, from the standpoint of applying the exhaustion doctrine as a matter of discretionary judgment, *see Kross, supra; Dale, supra,* the ERISA claim in the present case should be allowed to stand. The reasons for requiring exhaustion in the present case are far weaker than in *King,* 592 F.Supp. at 54. In *King* the plaintiff had pursued his state-based ERISA claim under the grievance provision of a collective bargaining agreement. *Id.* at 56. The plaintiff settled his grievance for money, and then brought an action in federal court on the same claim. *Id.* This court ruled that plaintiff's settlement in the context of the grievance process barred subsequent court actions on that same ERISA claim. *Id.* In the present case, there is apparently no collective bargaining agreement procedure to process plaintiff's ERISA claim, nor has plaintiff already invoked some other administrative grievance procedure. Moreover, plaintiff alleges that he feared retaliation if he invoked the plan's appeals procedure. Thus, the reasons for application of the exhaustion requirement were more compelling in *King* than in the present case.

fraudulent intent may be maintained by proof of a statement made by defendant, as of his own knowledge, which is false, provided that "the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge." *Snyder v. Sperry and Hutchinson Co.,* 368 Mass. 433, 444, 333 N.E.2d 421 (1975). Defendants move to dismiss the claim for deceit on the grounds that plaintiff has failed to allege legally recoverable damages.

Plaintiff's amended complaint alleges that defendants made three separate misrepresentations. First, plaintiff alleges that defendants promised to retrain plaintiff so that he could adequately fulfill his job opportunities. Second, plaintiff alleges that defendants promised him certain pretermination procedures. Third, plaintiff alleges that defendants represented that plaintiff's employment was secure and would continue. These representations, plaintiff asserts, were made with knowledge of their falsity and in reckless disregard of the truth, in order to induce plaintiff to remain employed with Hancock. Plaintiff further argues that he justifiably relied on these misrepresentations by refraining from taking affirmative measures to improve his job skills and from seeking employment elsewhere. Finally, in paragraph 46 of the amended complaint, plaintiff claims harm resulting from his justifiable reliance on the misrepresentations: "Such damages are including, but not limited to, damages for the fair and reasonable value of [plaintiff's] salary along with other benefits at the time of discharge."

■ Defendants' challenge to the sufficiency of plaintiff's claim for damages is two-fold. First, defendants argue, the amended complaint is particular enough only as to a claim for lost future wages. Second, defendants further contend, since plaintiff was an employee at will, he could have been discharged at any time without liability for lost wages, and thus plaintiff cannot prove loss of future wages. *In Berenson v. Mahler,* 326 Mass. 305, 307–08, 93 N.E.2d 740 (1950), the Supreme Judicial Court of Massachusetts sustained a demurrer to the complaint in an action for deceit on the grounds that the complaint did not allege specific damages legally recoverable. In evaluating the sufficiency of the allegation of damages, the Court stated: "The only damages set forth in the declaration before us are that the plaintiff incurred great cost and expense in buying and repairing a house and in moving into it. This is not enough." *Id.* at 308, 93 N.E.2d 740. As the Court in *Berenson* stated, and subsequent cases have made clear, the critical failing in the complaint in *Berenson* was that it was not clear that plaintiff suffered a loss instead of a profit as a result of the fraud. *Berenson,* 326 Mass. at 308, 93 N.E.2d 740; *Barrett Associates, Inc. v. Aronson,* 346 Mass. 150, 152–53, 190 N.E.2d 867 (1963); *Kilroy v. Barron,* 326 Mass. 464, 466, 95 N.E.2d 190 (1950). In *Kilroy,* the court distinguished *Berenson* on this basis and upheld the sufficiency of the allegation of damages in a deceit claim, stating: "Here it is plain that the plaintiff's allegation of the incurring of expense was the equivalent of an averment that he sustained a loss." *Kilroy,* 326 Mass. at 466, 95 N.E.2d 190.

Similarly, in the present case it is clear that plaintiff's allegation that he lost future wages and other benefits constitutes an averment that he sustained a loss. Unlike in *Berenson,* there is no reasonable likelihood that plaintiff profited as a result of the alleged fraudulent representations: plaintiff lost the benefit of retraining and he lost his job. The precise manner in which plaintiff was allegedly harmed is a matter of proof, not pleading. *Kilroy,* 326 Mass. at 466, 95 N.E.2d 190; *Barrett Associates,* 346 Mass. at 153, 93 N.E.2d 740; *See also Erikson v. O'Brien,* 362 Mass. 876, 877, 289 N.E.2d 831 (1972) (rescript) ("[A]lthough it may be in some respects inartfully drawn, we think each count [including deceit] is sufficient to state a cause of action."); *Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority,* 357 Mass. 40, 44, 255 N.E.2d 793 (1970) ("The damage sustained by the plaintiff need not be stated [in the complaint] with particularity."). Thus, plaintiff has pled damages

with sufficient particularity in its action for deceit.

▇▇▇ Defendants' second basis for challenging the claim for deceit is that the alleged damages are not legally cognizable. There are two methods of measuring legally cognizable damages for deceit in Massachusetts: "benefit of the bargain" damages and "out-of-pocket" losses. *Rice v. Price*, 340 Mass. 502, 508–11, 164 N.E.2d 891 (1960). Plaintiff proceeds on the "benefit of the bargain" theory of recovery. Plaintiff's damages, therefore, are the difference in value between the performance promised and that actually rendered. *See Productora E Importadora De Papel, S.A. De C.V. v. Fleming*, 376 Mass. 826, 838, 383 N.E.2d 1129 (1978). Allegedly Hancock and its agents promised plaintiff participation in a retraining program. The benefit of the bargain therefore would be the value of the retraining program. At the pleading stage such damages are sufficiently defined and amenable to specific proof so as to be legally cognizable. The second purported misrepresentation is that defendant guaranteed plaintiff certain pretermination procedures. Plaintiff was terminated without the benefit of these procedures. Wages and benefits would likely have accrued to plaintiff during the pendency of the allegedly promised pretermination process. The loss of these wages and benefits are asserted in the complaint and are legally cognizable; they are the benefit of the bargain, they are related to past services, and they are amenable to specific proof.

▇▇▇ The third alleged misrepresentation is that plaintiff would have secure and continued employment with defendant. Defendants argue that plaintiff was an employee at will. The alleged promises to retrain and to provide pretermination procedures may have limited the at-will nature of plaintiff's employment. Specifically, these two promises may have prolonged plaintiff's employment for an ascertainable period of time. The promise of secure and continued employment, on the other hand, is vague and general. It is not a representation of employment of a specific period.

Consequently plaintiff remained an employee at will. *See McCone v. New England Telephone and Telegraph Co.*, 393 Mass. 231, 233 n. 6, 471 N.E.2d 47 (1984). Any determination of how long plaintiff would have remained employed would necessarily involve speculation, since he could have been terminated at any time after the period filled by the retraining program and the pretermination procedures. An employee at will is not entitled to benefits as damages which "he neither contemplated or included in his contract," and which are unrelated to past services. *Maddaloni v. Western Mass. Bus Lines, Inc.*, 386 Mass. 877, 884, 438 N.E.2d 351 (1982). In addition, damages generally may not be awarded for lost wages if the employment is terminable at will. *Kravetz v. Merchants Distributors, Inc.*, 387 Mass. 457, 463, 440 N.E.2d 1278 (1982) (citing *Maddaloni, supra*). Consequently plaintiff has failed to allege damages cognizable in a claim for deceit based on the representation that plaintiff would have secure and continued employment. Defendants' motion to dismiss Count Four, the claim for deceit, therefore should be denied in part and allowed in part.

## V. Claim for Promissory Estoppel

▇▇ In Count Five, plaintiff sets forth a claim for damages based on promissory estoppel. Specifically, plaintiff alleges that Hancock through several oral promises and other representations, induced plaintiff to believe that he had secure and continuing employment, and that he would be placed in a retraining program. Plaintiff argues that he will be severely prejudiced and injustice will result if these promises are not enforced. Essentially plaintiff has recast his deceit claim in the form of promissory estoppel.

Massachusetts had adopted the theory of promissory estoppel. *Loranger Construction Corp. v. E.F. Hauserman, Co.*, 6 Mass.App. 152, 374 N.E.2d 306, *aff'd* 376 Mass. 757, 760–61, 384 N.E.2d 176 (1978). In *Loranger*, the Supreme Judicial Court eschewed the term "promissory estoppel," stating that promises enforceable by virtue

of reliance would be treated as "contracts" pursuant to traditional contract theory. *Id.* at 761, 384 N.E.2d 176. *See also McAndrew v. School Committee of Cambridge,* 20 Mass.App. 356, 364, n. 11, 480 N.E.2d 327 (1985). In *McAndrew,* the Appeals Court quoted section 90(1) of the Restatement (Second) of Contracts to detail the elements of this contractual theory. 20 Mass.App. at 363, 480 N.E.2d 327. Section 90(1) of the Restatement provides:

> Promise Reasonably Inducing Action or Forbearance
>
> (1) A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Defendants move to dismiss on the grounds that, as a matter of law, plaintiff cannot prove any legally cognizable damages. Defendants essentially repeat their challenge to the claim for deceit, addressed above, again relying principally on the case of *McCone,* 393 Mass. 231, 471 N.E.2d 47.

As stated above, plaintiff does not allege that his employment with Hancock was for a specific period, nor that he was terminable only for just cause. The time taken by a retraining program and for pretermination procedures may have extended plaintiff's employment for an ascertainable period of time. Wages and benefits during this time period would be related to past services and thus would be legally cognizable damages under a promissory estoppel theory as past-earned benefits. Plaintiff alleges that, in reliance on defendants' promises of a retraining program and pretermination procedural guarantees, he stayed in Hancock's employ instead of seeking employment elsewhere at a time when he was more marketable. The nature of plaintiff's employment beyond these periods of retraining and pre-termination process, however, remained at-will employment. *See McCone,* 393 Mass. 231, 233 n. 6, 471 N.E.2d 47.

The promise of secure and continued employment is simply too vague to be enforceable under the doctrine of promissory estoppel and thereby transform the nature of plaintiff's employment from at-will to employment for a definite period. *See Pepsi-Cola General Bottlers, Inc. v. Woods,* 440 N.E.2d 696 (Ind.App.1982) (damages of future wages related to general promise of future employment is not recoverable under theory of promissory estoppel); *Adler v. American Standard Corp.,* 538 F.Supp. 572, 581 (D.Md.1982) (relinquishment of alternative employment in reliance on promise that job security would be protected does not modify a contract for at-will employment under Maryland law for either contract or promissory estoppel theory). Consequently, plaintiff cannot recover as damages wages or benefits related to future services beyond that which would accrue during the period covered by a retraining program and pretermination procedures. Defendants' motion to dismiss the promissory estoppel claim, Count Five, therefore should be denied in part and allowed in part.

## VI. *Claim for Breach of Contract*

Count Six of the amended complaint is for breach of contract. Plaintiff claims that defendants made oral and written representations, including those found in Hancock's employee handbook, which became part of plaintiff's employment contract. Defendants vigorously argue that unbargained for representations made in employee handbooks and manuals cannot become binding contracts between the employer and the employee. Defendants assert that *McCone, supra,* is dispositive, on the grounds that it holds that employment for an indefinite term is employment at will, and therefore damages for lost future wages are not recoverable. Careful examination of *McCone* shows that it does not stand for the proposition that provisions in employee manuals cannot be incorporated into the employment contract. In footnote 6 of its opinion in *McCone,* the Supreme Judicial Court merely stated that it inferred that the employment contract was at will from the fact that the plaintiff did not

claim that the employment contract was in writing or for a specified term. 393 Mass. at 233 n. 6, 471 N.E.2d 47. This statement in *McCone* does not exclude the possibility that oral promises and written terms in employee manuals may modify the employment contract. Moreover, in *Garrity v. Valley View Nursing Home, Inc.*, 10 Mass. App. 822, 406 N.E.2d 423 (1980) (rescript), the Appeals Court accepted a district court finding that the terms and provisions of the employee manual which defendant had required plaintiff to sign in 1971 constituted part of the contract of employment when she was discharged in 1976. *Id.* at 822, 406 N.E.2d 423. Representations made in an employee manual therefore may, in some circumstances, become part of the employment contract.

▮ Defendants also argue that plaintiff has failed to state a claim for breach of contract because of failure to allege legally recoverable damages. In the present case plaintiff claims the following four specific breaches of his employment contract: 1) failure to provide retraining; 2) failure to apprise plaintiff of areas of needed improvement; 3) failure to warn that termination of employment was imminent; and 4) failure to give plaintiff a reasonable opportunity to improve his work performance. The first and fourth alleged breaches are also the basis of the claims for damages under the theories of deceit and promissory estoppel. As explained in the discussion of those counts above, these two promises may have a measurable period during which plaintiff would have been entitled to wages and other benefits. In addition, the retraining program may well have a separate measurable value. These damages represent wages and benefits allegedly contemplated by the employment contract.

▮ The second and third alleged breaches, on the other hand, cannot be the basis of legally recoverable damages. Plaintiff has not alleged that Hancock promised that termination of employment would occur only for just cause, or that the employment was for a specific period. The employment contract therefore remained terminable at will after the period of time

of retraining and period covered by the pre-termination guarantee of the opportunity to improve performance. *See McCone, supra.* If plaintiff's job performance had been satisfactory—or even excellent—after this period of time, Hancock would have been free to terminate plaintiff's employment. Thus, future wages and benefits are not recoverable damages for breach of the promise to apprise plaintiff of unsatisfactory work performance or of the fact that his termination was imminent. Likewise, plaintiff cannot recover future wages and benefits for breach of the promises to retrain and to provide an opportunity to improve job performance beyond the period of time filled by those promises. Defendants' motion to dismiss Count Six, the claim for breach of contract, therefore should be allowed in part and denied in part.

VII. *Claims for Negligent Performance of Retraining and Evaluating Plaintiff*

▮ In Counts Seven and Eight, plaintiff alleges that defendants negligently performed their assumed duty to retrain and evaluate plaintiff. Specifically, in Count Seven plaintiff claims that Hancock represented that it would place plaintiff in a retraining program to assist in the improvement of his job skills, but negligently failed to provide such training, with the result that plaintiff's employment was terminated. Plaintiff, additionally claims, in Count Eight, that Hancock undertook annual performance evaluations, and that it negligently performed these evaluations by failing to warn at the last evaluation in 1983 that plaintiff was in jeopardy of being terminated. Plaintiff claims that he was lulled into a false sense of job security as a result of his job evaluations, and as a consequence his employment was terminated. Defendants move to dismiss Counts Seven and Eight on the grounds that they do not state claims upon which relief can be granted.

Plaintiff relies primarily on the case of *Chamberlain v. Bissel, Inc.*, 547 F.Supp. 1067 (W.D.Mich.1982). In *Chamberlain*, the defendant employer terminated the

plaintiff employee after 23 years of service. Three months before his termination, the employee received a routine performance appraisal involving both negative and positive comments. The court, applying Michigan law, held that an employer who undertook its contractual duty to conduct job performance reviews had a duty to use ordinary or reasonable care in the performance of those reviews. *Id.* at 1081. The court ruled that the performance of the employment contract obligations gives rise to a tort duty of ordinary care. *Id.* Since the defendant had a contractual obligation to conduct performance reviews, the court explained, it had a duty of reasonable care in performing those reviews. *Id.* The court also stressed that misfeasance was necessary to sustain an action in tort: "Thus while a complete failure to perform a contractual obligation may be actionable only as a breach of contract, the negligent performance of the obligation is actionable as a tort." *Id.*

Plaintiff in this case argues that, similar to the employee in *Chamberlain,* he was injured by the employer's inadequate performance of his job evaluation, and that this is an actionable tort. *See also Bulkin v. Western Kraft East, Inc.,* 422 F.Supp. 437 (E.D.Pa.1976) (negligent maintenance of personnel records actionable in tort under Pennsylvania law). *But see Prouty v. National R.R. Passenger Corp.,* 572 F.Supp. 200, 206 (D.D.C.1983) (no tort liability for alleged negligent maintenance of personnel records). Plaintiff, citing *Abrams v. Factory Mutual Liability Insurance Co.,* 298 Mass. 141, 10 N.E.2d 82 (1937), argues that Massachusetts also recognizes that inadequate performance of an assumed duty can give rise to an action in tort. In *Abrams* the court ruled that a claim against an insurer for failure to diligently prepare a case states a cause of action in both contract and tort. *Id.* at 144, 10 N.E.2d 82. The court stated that unskillfulness and negligence in the manner of performing the contractual duty, as distinguished from mere failure to perform, was a sufficient foundation for an action in tort. *Id.*

The extent to which inadequate performance of a contractual obligation will give rise to an action in tort varies from jurisdiction to jurisdiction. In general, however, tort obligations do not arise solely from contract, but instead are imposed by law, independent of the promises and therefore apart from the intentions of the parties. W. Prosser & W. Keeton, *Torts* § 92, at 655 (5th ed. 1984). "Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed." *Id.* at 656. In *Abrams, supra,* the party undertaking the obligation was an insurer. 298 Mass. at 142, 10 N.E.2d 82. In Massachusetts, insurers who undertake to procure insurance for another are liable in tort for their negligent failure to do so. *Rae v. Air-Speed, Inc.,* 386 Mass. 187, 435 N.E.2d 628 (1982). Thus, in the insurance context, the law may impose a duty as arising from the relationship of the contracting parties rather than from the contract itself. *See id.* at 192, 432 N.E.2d 628. In the present case, on the other hand, plaintiff argues that a tort duty arose simply out of the actions and intentions of the parties. The Supreme Judicial Court of Massachusetts has recently recognized this distinction between obligations arising out of the contract and those imposed by law in *Anthony Pier 4, Inc. v. Crandall Dry Dock Engineers, Inc.,* 396 Mass. 818, 489 N.E.2d 172 (1986), where the court stated that "[b]ecause the standard of performance is set by the defendants' promises, rather than imposed by law, ..." an express warranty claim is and generally has been understood to be an action of contract rather than of tort. *Id.* at 822, 489 N.E.2d 172 (citing W. Prosser & W. Keeton, *Torts* § 92, at 656, 657 (5th ed. 1984)). Thus, absent an independent duty imposed by law, plaintiff has not stated an action in tort by alleging injury caused by Hancock's negligent performance of its promises to retrain him or to perform job evaluations. *See also Prouty,* 572 F.Supp. at 206 (no tort action lies for claim of negligent maintenance of employment records where obli-

gation arose solely out of the employment contract).

The next step in the analysis of the sufficiency of plaintiff's claims in Counts Seven and Eight is to determine whether there was some duty of care with regard to retraining and evaluation that was imposed by law, independent of the promises of the parties. A duty of care is implied in various types of contracts. For example, there is a legally imposed duty of reasonable care in some personal services contracts. *See Klein v. Catalano,* 386 Mass. 701, 718–19, 437 N.E.2d 514 (1982) (in the absence of express agreement otherwise, architects and others such as doctors, engineers and attorneys are required by law to exercise that skill and judgment which can be reasonably expected from similarly situated professionals). In the present case involving the employment context, the "duty of care" that defendant owed to plaintiff is the implied covenant of good faith and fair dealing. *See Siles v. Travenol Laboratories, Inc.,* 13 Mass.App. 354, 358, 433 N.E.2d 103, *rev. denied,* 386 Mass. 1103, 440 N.E.2d 1176 (1982). An action for breach of this covenant is an action in contract, not tort. *McCone,* 393 Mass. at 234 n. 8, 471 N.E.2d 47. *Redgrave v. Boston Symphony Orchestra,* 557 F.Supp. 230, 236–37 (D.Mass.1983); *Tenedios v. Wm. Filene's Sons Co.,* 20 Mass.App. 252, 255 n. 4, 479 N.E.2d 723 (1985). Thus, to the extent that plaintiff argues that an obligation of due care is imposed independent of the promises of the parties, that obligation is defined in Massachusetts case law as an action in contract. Moreover, as explained with reference to Count Six above, the inadequate performance of the promise to retrain plaintiff and the performance of job reviews would not constitute a breach of the implied covenant of good faith and fair dealing. *See Tenedios,* 20 Mass.App. at 254, 479 N.E.2d 723 (no liability for a dismissal resulting from inadequate investigation or arbitrariness).

In sum, to the extent that the duty of care in the performance of the promises of retraining and in conducting job evalua-tions arose solely from the promises and intentions of the parties, no tort duty arises; to the extent the law imposed a duty of care on defendant Hancock as employer, that duty is defined by the covenant of good faith and fair dealing, and a breach of that covenant sounds in contract, not tort. Moreover, the alleged conduct by defendant would not constitute a breach of that covenant. Consequently, plaintiff's claims for negligent performance of promises to retrain and to conduct job evaluations fail to state a cause of action upon which relief can be granted. Defendants' motion to dismiss Counts Seven and Eight therefore should be allowed.

### VIII. *Claim for Interference with Advantageous Relationship*

■ Count Nine of the amended complaint is a claim for tortious interference with an advantageous relationship. The elements of the tort that plaintiff must prove are: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and malicious interference with it; (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. *Comey v. Hill,* 387 Mass. 11, 19, 438 N.E.2d 811 (1982). Plaintiff alleges that defendants Gengemi and Hahesy intentionally and maliciously interfered with an advantageous business relationship by terminating him because of his age. Defendants argue that plaintiff's claim in Count Nine is essentially a claim that he was discriminated against in his employment on the basis of his age. Count Nine should be dismissed, defendants further argue, because remedies already exist for age discrimination in employment, and therefore this Court should not create a duplicative cause of action.

Defendants' argument is unsound for two reasons. First, the tort of interference with an advantageous relationship is a longstanding action at common law. Plaintiff has correctly and sufficiently pled the elements of this tort.[4] *Cf. Melley v. Gil-*

---

4. The tort of interference with an advantageous relationship is made out where there is a loss

*lette Corp.,* 19 Mass.App. 511, 513, 475 N.E.2d 1227 (1985), *aff'd,* 397 Mass. 1004, 491 N.E.2d 252 (1986) (court noted that unless it created a new common law right, there is no common law action for wrongful termination of employment on grounds of age discrimination). Thus, recognizing Count Nine as stating a cause of action does not constitute the "creation" by this Court of a new cause of action.

The second flaw in defendants' motion to dismiss Count Nine is their assertion that permitting duplicative remedies for age discrimination is contrary to Massachusetts case law and policy. The Supreme Judicial Court's decision in *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811 (1982) clearly holds that the Massachusetts age discrimination statute, M.G.L. c. 151B, does not foreclose a claim for interference with advantageous relations in which age discrimination is pled as the element of a wilful act without justifiable cause. *Id.* at 19–20, 438 N.E.2d 811. Defendants argue that *Comey* is distinguishable because it involved a claim that a third party interfered with the employment contract rather than, as in this case, the alleged interference was by the employer or its agents. Defendants' attempt to distinguish *Comey* on this basis is contradicted by the broad language of the decision. The Court explained:

> Although M.G.L. c. 151B is a comprehensive statute in the sense that it covers various acts and practices where the possibility for discrimination is evident, we do not view the statute as tending to narrow or eliminate a person's common law rights where applicable. The statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies. Particularly in the area of age discrimination, the statute specifically states that "nothing contained in

this chapter shall be deemed to repeal ... any other law of the commonwealth relating to discrimination because of age." M.G.L. c. 151B, § 9. Thus we conclude that c. 151B was not meant to be an exclusive remedy.

Thus, the claim in Count Nine is neither a new nor an impermissibly duplicative cause of action. Defendants' motion to dismiss Count Nine, the action for interference with an advantageous relationship, therefore should be denied.

### IX. *Claim for Age Discrimination in Violation of ADEA*

In Count Ten of the amended complaint, plaintiff claims that Hancock terminated plaintiff's employment solely due to his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* To bring a civil action under the ADEA, a plaintiff must first timely file a charge with the Equal Employment Opportunity Commission ("EEOC"), 29 U.S.C. § 626(d). In any state which has a law prohibiting age discrimination, such as Massachusetts, *see* 29 C.F.R. § 1626.-9(b), a plaintiff must file the charge with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2). The time period for filing the charge begins to run from the date plaintiff is notified of the alleged discriminatory act. *See Delaware State College v. Ricks,* 449 U.S. 250, 256–59, 101 S.Ct. 498, 503–05, 66 L.Ed.2d 431 (1980) (Title VII case); *Mogley v. Chicago Title Insurance Co.,* 553 F.Supp. 1045, 1046–47 (E.D.Mo.), *aff'd,* 719 F.2d 289 (8th Cir.1983) (ADEA case). In the present case, plaintiff and defendants agree that the date of notification of the alleged discriminatory act was April 20, 1984. In addition, plaintiff and defendants agree that plaintiff filed the charge with the EEOC on February 14,

resulting from the defendant's intentional and improper interference with the business relationship between the injured party and a third person. *Melley v. Gillette Corp.,* 19 Mass.App. 511, 513, 475 N.E.2d 1227 (1985), *aff'd* 397 Mass. 1004, 491 N.E.2d 252 (1986). In general, defendant Hancock, as employer, could not be liable for tortious interference with its own contract with plaintiff in this case. *See Gram v. Liberty Mutual Insurance Co.,* 384 Mass. 659,

663 n. 3, 429 N.E.2d 21 (1981). In addition, an individual defendant may escape liability if the interference was privileged as part of his employment responsibilities. *Steranko v. Inforex, Inc.,* 5 Mass.App. 253, 273, 362 N.E.2d 222 (1977). Defendants Gangemi and Hahesy were not privileged to act as they did, however, if they acted, even in the scope of their employment, with actual malice. *Id.* at 273, 362 N.E.2d 222; *Gram,* 384 Mass. at 663, 429 N.E.2d 21.

1985. The parties disagree, however, on whether the filing of the charge was within 300 or 301 days of plaintiff's notification on April 20, 1984 of the alleged discriminatory act. Defendant moves to dismiss Count Ten on the basis that 301 days lapsed, and therefore plaintiff's charge with the EEOC was not timely.

 The disagreement on whether February 14, 1985 was the 300th or 301st day is based on the parties' differing methods of computation. Defendant argues that April 20, 1984—the day the unlawful practice occurred for purposes of 29 U.S.C. § 626(d)(2)—was day 1. Plaintiffs method of computation would make the following day, April 21, 1984, day 1. Federal Rules of Civil Procedure 6(a) is dispositive of whether April 20 should or should not be counted as day 1 for purposes of calculating the 300 day filing period in 29 U.S.C. § 626(d)(2). Rule 6(a) provides:

Rule 6. Time

(a) Computation. In computing any period of time prescribed or allowed by these rules, ... or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

The phrase "any applicable statute" means any statute that will be applied in an action in the district court. *See, e.g., Downie v. Electric Boat Division,* 504 F.Supp. 1082, 1085 (D.Conn.1980) (applying Fed.R.Civ.P. 6(a) to ADEA action where defendant challenged timeliness of filing of charge with the EEOC); *EEOC v. Sears, Roebuck & Co.,* 504 F.Supp. 241, 276–277 (N.D.Ill.1980) (computation of EEOC commissioner's term of office for purposes of determining his authority in Title VII suit); *Pennsylvania Public Utility Commission v. United States,* 311 F.Supp. 1024, 1028 (M.D.Pa. 1970) (computation for purposes of Inter-

state Commerce Act); 4 Wright & Miller, *Federal Practice and Procedure* § 1162.[5] The application of Rule 6(a) to the present case is clear: April 20, 1984 does not constitute day 1. Plaintiff's filing with the EEOC was thus timely. Defendants' motion to dismiss Count Ten therefore should be denied.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Defendants' motion to dismiss Count One (implied covenant of good faith and fair dealing) is allowed.

2. Defendants' motion to dismiss Count Two (age discrimination, M.G.L. c. 151B, § 4, and wrongful termination) is allowed.

3. Plaintiff's claim under M.G.L. c. 149, § 24A is dismissed.

4. Defendants' motion to dismiss Count Three (wrongful discharge and section 501 of ERISA) is allowed in part and denied in part.

5. Defendants' motion to dismiss Count Four (deceit) is allowed in part and denied in part.

6. Defendants' motion to dismiss Count Five (promissory estoppel) is allowed in part and denied in part.

7. Defendants' motion to dismiss Count Six (breach of contract) is allowed in part and denied in part.

8. Defendants' motion to dismiss Count Seven (negligence) is allowed.

9. Defendants' motion to dismiss Count Eight (negligence) is allowed.

10. Defendants' motion to dismiss Count Nine (interference with advantageous business relations) is denied.

5. Defendants support their position by citing decisions that hold that in Title VII cases the day of the receipt of the right to sue letter constitutes day 1 for purposes of calculating the 90 day period during which the plaintiff must initiate his civil action. *See e.g., Bailey v. Boilermakers Local 667 of the International Brotherhood of Boilermakers,* 480 F.Supp. 274, 282 (N.D.W.Va.1979). Even in the Title VII context,

however, *Bailey* is the minority position. *See Davis v. Buffalo Psychiatric Center,* 613 F.Supp. 462, 465–66 (W.D.N.Y.), *modified on other grounds,* 623 F.Supp. 19 (1985). Courts have noted, nevertheless, that the precise scope of the applicability of Rule 6(a) remains unsettled. *See, e.g., Tribue v. United States,* 645 F.Supp. 1024, 1027–28 (N.D.Ill.1986).

11. Defendants' motion to dismiss Count Ten (ADEA) is denied.