HELEN TENEDIOS vs. WM. FILENE'S SONS COMPANY, INC.
& another.[1]

Essex. February 12, 1985. — June 24, 1985.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Contract*, Employment. *Emotional Distress. Practice, Civil,* Verdict, Deliberation of jury. *Jury and Jurors.*

Evidence tending to show that an employee had been discharged from her position in bad faith and thereby had been injured in her expectations of future wages and benefits was not sufficient to establish liability of her former employer under the doctrine of *Fortune* v. *National Cash Register Co.,* 373 Mass. 96 (1977), for wrongful termination of her employment. [254-255]

An employee's emotional distress resulting from the allegedly arbitrary termination of her employment was not actionable apart from her rights under the Workmen's Compensation Act. [255-256]

In a civil action against an employee and his employer, where the employer's liability was derivative from that of the employee, a jury's general verdicts which found damages in the same amount against each defendant were correctly interpreted each as stating the total amount of recovery cast jointly and severally against the defendants, and an affidavit by the jury foreman could not be received for the purpose of showing that the jury intended the plaintiff to have a total recovery double that amount. [256-257]

CIVIL ACTION commenced in the Superior Court Department on September 21, 1978.

The case was tried before *Hiller B. Zobel, J.*

*George E. Brankey* for the plaintiff.

*Carmine W. DiAdamo* for the defendants.

KAPLAN, J. On December 9, 1976, the plaintiff Helen Tenedios was working as a salesclerk in the junior sportswear department of a branch store of the defendant Wm. Filene's Sons Company, Inc. (Filene's), located in Peabody. She had

[1] Joseph S. Bisson.

worked for Filene's for nineteen years, was well regarded, and had received a number of awards for reporting incidents of shoplifting. On the day mentioned, about 12:30 P.M., while the plaintiff was waiting on a customer named Esther Withington, the codefendant Joseph S. Bisson, security manager of the store, burst upon the plaintiff, seized one of the customer's boxes of merchandise, and ordered the plaintiff to the rear of the department. Thrusting the box at the plaintiff's face, Bisson said, "This is the sweater you were going to give that friend of yours," meaning Withington. The plaintiff denied that Withington was her friend, and denied the charge. A security employee, Eileen Suckley, escorted the plaintiff to the store's security office where she was detained and pressed to sign a form admitting guilt. The defendant Bisson entered carrying a sweater taken from the box. When the plaintiff asked to see the store manager or director of personnel, Bisson refused and said, "I don't need anybody, I have the evidence right here." The plaintiff was locked in the room while Bisson and Suckley left for a few minutes. Returning, Bisson threatened to handcuff the plaintiff and drag her through the store if she did not sign. The plaintiff did not sign and Bisson in fact handcuffed her.

Peabody police arrived shortly and conducted the plaintiff the local police station where Suckley filed an application for a criminal complaint charging the plaintiff with larceny under $100. That afternoon the plaintiff was arraigned in Peabody District Court, and the following day the Salem Evening News reported the arrest and the charge. On December 17, 1976, Filene's advised the plaintiff by letter that she had been fired as of December 10.

On January 13, 1977, a jury acquitted the plaintiff of the larceny charge but Filene's did not reinstate her and indeed for a time opposed her unemployment compensation on the ground that she had been discharged for violating store rules. The plaintiff sought but failed to secure a job with various stores on the North Shore.

In the present action against Filene's and Bisson, the plaintiff has recovered a judgment against them, jointly and severally, for a total of $40,000. A jury returned verdicts for the plaintiff

against each defendant for $1,000 on counts of false imprisonment; $35,000 on counts of malicious prosecution; and $4,000 on counts of abuse of process. On counts of defamation, the jury found for the defendants. The trial judge directed verdicts for the defendants on counts of intentional infliction of emotional distress, and for the defendant Filene's on a count against it of wrongful termination of employment.

Upon her appeal, the plaintiff, having taken proper objections below, attacks the judge's direction of verdicts, and also complains of the judge's order establishing that her recovery is $40,000, not $80,000 as the plaintiff claims on the basis of her reading of the jury's intention.[2]

1. *Wrongful termination.* Here both parties assume that the doctrine of the *Fortune* case (*Fortune* v. *National Cash Register Co.*, 373 Mass. 96 [1977]), would apply if the facts as to the discharge sufficed, even though the record indicates that the plaintiff's employment was covered by a collective bargaining agreement and was not an employment at will, to which alone the *Fortune* doctrine applies. See *Azzi* v. *Western Elec. Co.*, 19 Mass. App. Ct. 406, 409-410 (1985); *Bertrand* v. *Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984).[3] For purposes of the appeal, we are content to allow the parties to make their own law. Still the evidence does not support the claim. We may assume, as the plaintiff contends, that the dismissal was a product of inadequate investigation, and an act of bad faith. Still there was no such breach of an understood covenant of fair dealing as is embraced by the *Fortune* rule. A discharge that is contrived to despoil an employee of earned commissions or similar compensation due for past services will qualify under *Fortune.* See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981); *Maddaloni* v. *Western Mass. Bus Lines,* 386 Mass. 877, 881-884 (1982);

---

[2] The plaintiff says the judge's instructions on defamation were faulty, but she did not register an objection at the time. She claims to be entitled to punitive damages, but it is enough to say that she raised no such question at trial.

[3] Any claim that might have been available under the collective bargaining agreement for discharge without reasonable cause may be taken as waived by the plaintiff's failure to pursue it at trial.

*McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 233-235 (1984). So also will a discharge actuated by a reason that offends a public policy, as where an employee is dismissed for refusing to commit a crime. See *Gram, supra* at 668 n.6 (collecting cases); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 303-307 (1982). That the plaintiff was fired arbitrarily and was injured in her expectations of future wages or other future emoluments does not, without more, encompass the *Fortune*-type of liability, however meretricious we may consider the dismissal to have been. See *Gram*, 384 Mass. at 670-671; *Kravetz* v. *Merchants Distribs. Inc.*, 387 Mass. 457, 463 (1982); *McCone*, 393 Mass. at 233-235.[4]

2. *Intentional infliction of emotional distress.* The trial judge directed a verdict for the defendants on this claim in the light of *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 548-550 (1980), where it was held, on facts resembling those in the present case, that an employee's emotional distress caused by the employer's intentional behavior, which arose out of the employment relationship, was not separately actionable because it was a subject of compensation under the workers' compensation act.[5] See G. L. c. 152, § 24 ("exclusivity" provision). After the *Polaroid* case, it was still possible to offer the argument, as the plaintiff has done, that the statute did not extinguish the separate claim in a case like the present in which the emotional injury followed upon a bad faith dismissal of the employee (in *Polaroid* the employee was offered reinstatement). That possible escape from *Polaroid* was closed by *Simmons* v. *Merchants Mut. Ins. Co.*, 394 Mass. 1007 (1985) (rescript by divided court). See also *Ferriter* v. *Daniel O'Connell's Sons*, 381

---

[4] The Supreme Judicial Court has reasoned that if the law were otherwise, so that discharge without just cause could constitute a breach of the implied covenant of good faith, there would be possible conflict with the Commonwealth's unemployment security law. See *Gram*, 384 Mass. at 671.

The plaintiff's argument that wrongful termination of employment may itself be actionable as a tort, is negated in *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 557 F. Supp. 230, 235-237 (D. Mass. 1983).

[5] Polaroid, Foley's employer, instigated charges of rape against him. Foley was indicted, tried, and acquitted.

Mass. 507, 539 (1980) (Quirico, J., concurring and dissenting); *Paris* v. *Snappy Car Rental, Inc.*, 18 Mass. App. Ct. 968 (1984); *Milner* v. *Stepan Chem. Co.*, 599 F. Supp. 358 (D. Mass. 1984). And see *Kelly's Case*, 394 Mass. 684, 689 (1985) (employee who suffers emotional injury in consequence of being laid off or transferred may recover workers' compensation).[6]

3. *The verdicts.* Before the judge instructed the jury, there was discussion about the way the jury would record their verdicts. The judge said there would be general verdict slips for each count against each defendant — "They will be special questions," said the judge, "in the sense that they will be decided by the topics, by the issues, that are going to be sent to the jury." There was no objection. Neither was there objection to the judge's instructions regarding the verdict slips, which included a warning against duplicating any recoveries. The plaintiff urges on appeal that the judge erred in using the general verdict slips, but no such objection was presented, and we perceive no error in a matter of the form of verdicts largely left to a trial judge's discretion. See *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 291 (1978); *R.H. Baker & Co.* v. *Smith-Blair, Inc.*, 331 F.2d 506, 508 (9th Cir. 1964). See also Mass.R.Civ.P. 49(a) & (b), 365 Mass. 812-813 (1974).

On each subject as to which the jury found for the plaintiff, the verdicts showed the same amount against each defendant; thus, for malicious prosecution, $35,000 against Filene's and $35,000 against Bisson. After judgment the defendants moved, in effect, for a clarifying statement that the total recovery was $40,000 cast jointly and severally against the two defendants. The judge entered an order accordingly. Thereupon the plaintiff moved, in effect, for a judgment for $80,000, and in support of the application she filed an affidavit of the jury foreman purporting to show how the jury reached their verdict and that they intended the larger amount.

---

[6] That the claim against Bisson for emotional distress falls with the claim against the employer, see G. L. c. 152, § 15, as amended by St. 1971, c. 941, § 1; *Saharceski* v. *Marcure*, 373 Mass. 304, 306-307 (1977); *Roy* v. *Star Chopper Co.*, 584 F.2d 1124, 1130-1131 (1st Cir. 1978); Locke, Workmen's Compensation § 652 (2d ed. 1981).

The relationship of Filene's and Bisson, as shown by the evidence, being that of employer-employee, with Filene's liability derivative from Bisson's, the judgment, as clarified, was correct. See *Kabatchnick* v. *Hanover-Elm Bldg. Corp.*, 331 Mass. 366, 368-369 (1954). As to the foreman's affidavit, it could not be considered, as it went to the mental processes of the jurors in arriving at their verdicts, whether in carrying out the judge's instructions or in conceiving of the consequences of their own findings. See *Woodward* v. *Leavitt*, 107 Mass. 453, 460 (1871); *Commonwealth* v. *Fidler*, 377 Mass. 192, 195-198 (1979); *Cassamasse* v. *J.G. Lamotte & Son*, 391 Mass. 315, 317-318 (1984); *Commonwealth* v. *Dixon*, 395 Mass. 149, 150-151 & n.3 (1985); *Commonwealth* v. *Saunders, post* 917 (1985). The case does not fall in the narrow, cautious band of decisions in which correction of a verdict is allowed for clerical error in the return. See *Capen* v. *Stoughton*, 16 Gray 364, 367-368 (1860); *Karrick* v. *Wetmore*, 210 Mass. 578, 579-580 (1912); *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 386-388 (1912).

The case of *Shears* v. *Metropolitan Transit Authy.*, 324 Mass. 358 (1949) (Qua, C.J.), is particularly helpful. There the jury in a personal injury action returned verdicts of $3,500 against each of two defendants. The plaintiff moved to amend the verdicts to record damages of $7,000, and she supported the motion with affidavits of all the jurors that there was an agreement of the jury to award that amount. Upholding the trial judge's denial of the motion, the court said (at 361): "So far as appears the jurors intended to return a verdict of $3,500 against each defendant, and that is precisely what they did. There is nothing to show that they then intended that either defendant should pay $7,000. They may have supposed that the plaintiff could collect $3,500 from each defendant, or $7,000 in all, but that would not be a clerical error. That would be an error of law as to the legal consequences of the verdicts they knew they were rendering. That error would be the result of misunderstanding or forgetting the very plain instruction given to them." See also *Carzis* v. *Hassey*, 6 Mass. App. Ct. 13, 14-16 (1978).

*Judgment affirmed.*