**Anthony PARISI, Plaintiff,**

v.

**TRUSTEES OF HAMPSHIRE COLLEGE, Defendant.**

**Civ. A. No. 88–0155–F.**

United States District Court, D. Massachusetts.

April 21, 1989.

Michael G. West, Boston, Mass., for plaintiff.

Jay M. Presser, Skoler, Abbott, Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I.

This is a case removed from the state court, concerning plaintiff's employment termination. The action includes claims for breach of contract, breach of a covenant of fair dealing, emotional distress, interference with rights secured under the United States and Massachusetts Constitutions and defendant's violation of certain provisions of the Federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* All of these claims are the subject of defendant's motion to dismiss based on preemption or failure to state a claim. Fed.R.Civ.P. 12(b)(6).[1]

### II.

In reviewing the legal sufficiency of the complaint in the context of a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a court must take as admitted the material allegations of the complaint and must construe the complaint liberally in favor of the plaintiff. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). The Court should not dismiss the complaint or any given count "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Considering this standard, the material facts alleged are as follows:

Plaintiff commenced work with Hampshire College ("Hampshire") on or about July 10, 1978 as an Analyst–Programmer. In July 1982 Hampshire hired plaintiff as a Senior Analyst–Programmer. Plaintiff's compensation package at Hampshire included retirement plan contributions, medical insurance and a long term disability income plan. This is admittedly an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1) and defendant acknowledges its status as the plan "administrator" as defined in 29 U.S.C. § 1002(16)(A).

In October 1982 a new computer system was installed at Hampshire. Work-related pressure on plaintiff caused by the implementation of this new computer system resulted in a stressful situation for plaintiff, exacerbated by his medical problems.

In September 1985 plaintiff's job performance became an issue. After certain meetings with plaintiff, on November 6, 1985 representatives of Hampshire requested plaintiff's resignation. At this time, and for the first time, plaintiff informed Hampshire of the depression he had been experi-

---

1. In recognition of the amendment to the removal statute with the addition of 28 U.S.C. § 1441(e) as plaintiff pointed out in his memorandum in opposition to defendant's motion to dismiss, defendant has dropped the portion of the motion to dismiss regarding the Court's lack of subject matter jurisdiction over Count V.

encing for some time previous. At the conclusion of the meeting at which Hampshire requested plaintiff's resignation, plaintiff was allowed twenty-four hours to decide.

On November 7, 1985, plaintiff notified Hampshire that based on the advice of his doctor he was requesting a sick leave. At this point Hampshire responded that the request was unacceptable as it would tie up plaintiff's position. On November 18, 1985, after plaintiff had once more informed Hampshire of his bouts with depression, Hampshire's Director of Personnel, Margot Roche, suggested that if plaintiff's illness was serious he should consider a claim for disability. On December 3, 1985, in response to plaintiff's request, Hampshire sent plaintiff a letter informing him that he had been allowed a thirty-day sick leave, ten days of which would be paid and the remainder of which would be deducted from accrued vacation time.

Following the receipt of a letter from plaintiff's doctor regarding plaintiff's medical condition as well as a letter from plaintiff informing Hampshire that he would not be able to return within the leave time allowed, Hampshire wrote to plaintiff, notifying him that as of December 19, 1985, he would be placed on inactive employee status and granted an unpaid leave of absence.

On March 4, 1986, plaintiff wrote to Director of Personnel Roche requesting the necessary forms to apply for long term disability payments. By letter dated March 17, 1986, Roche replied to plaintiff's request, stating that he was not eligible for disability benefits. With a letter dated July 28, 1986, Roche informed plaintiff that his employment with Hampshire would cease effective July 31, 1986. Plaintiff's request for reconsideration of Hampshire's decision to terminate him was denied by correspondence from Hampshire dated September 4, 1986.

Plaintiff had also applied on July 31, 1986 with the Department of Health and Human Services for disability benefits. That Department notified plaintiff on October 6, 1986, that it had determined that he had been disabled since November 6, 1985. On May 12, 1987, Hampshire sent plaintiff a letter informing him that his health coverage with Hampshire would expire on July 12, 1987.

Following receipt of a correspondence from plaintiff's counsel regarding plaintiff's claims against Hampshire, the parties arranged a meeting. As a result of this meeting Hampshire sent plaintiff the necessary forms to apply for long term disability benefits. Plaintiff filed this application with the disability insurance company which approved plaintiff's request, also determining plaintiff's disability to have commenced on November 6, 1985.

It is from these facts that plaintiff derived his pleaded claims of breach of the employment contract (Count I), breach of the covenant of fair dealing implicit in his employment contract (Count II), intentional infliction of emotional distress resulting from the wrongful denial of long term disability benefits (Count III), violation of plaintiff's constitutional rights (Count IV), and failure to provide plaintiff with the requested information regarding the Long Term Disability Income Plan in violation of ERISA (Count V).

### III.

#### A. Preemption

Defendant's first and most pervasive attack on the complaint is that under the holdings of such cases as *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983), and *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), all of plaintiff's common law theories of recovery are preempted by ERISA as they "relate to" an employee benefit plan. Title 29 U.S.C. § 1144(a) (ERISA's explicit preemption provision). *Shaw* held that a state law-based claim "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." 463 U.S. at 97, 103 S.Ct. at 2900 (footnote omitted). *See Sampson v. Mutual Benefit Life Insurance Co.*, 863 F.2d 108, 110 (1st Cir. 1988).

As might be expected to result from such vague judicial edicts, the type relationship any given state law-based legal claim is required to have with an employee benefit plan in order to apply ERISA's preemption provision has been the subject of a fair amount of debate. While *Dedeaux* held that certain common law causes of action were preempted because they were "based on alleged improper processing of a claim for benefits under an employee benefit plan," 481 U.S. at 48, 107 S.Ct. at 1553, *Shaw* recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. *See, e.g., Mackey v. Lanier Collections Agency & Services Inc.,* — U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (holding that a state law allowing garnishment of plan benefits to satisfy a claim against a plan participant was not preempted). Although the *Shaw* Court found it unnecessary to express its view "about where it would be appropriate to draw the line," delineate this Court must. *Id.*

■ The concern out of which the ERISA preemption provision was born was the threat of inconsistent and conflicting state regulation of ERISA plans. *Quigley v. Unum Life Insurance Co.,* 688 F.Supp. 80, 83 (D.Mass.1988) (citing *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Therefore, to the extent that a given claim does not implicate this concern or directly affect ERISA's regulatory scheme, the claim should withstand ERISA's preemption provision. *See Dedeaux,* 481 U.S. at 46, 107 S.Ct. at 1552 (citing the comments of representative Dent describing the ERISA preemption provision as the law's "crowning achievement" providing the "reservation to Federal authority the sole power to regulate the field of employment benefit plans.").

■ Counts I through IV each incorporate paragraphs 1 through 37 of the complaint which comprise the entire factual background of the action. These paragraphs include allegations concerning both the treatment of plaintiff in his termination and, as part thereof, the processing of plaintiff's claim for disability benefits. With the amorphous casting of these allegations it is difficult to determine whether these Counts have the appropriate relation to an employee benefit plan warranting preemption. As drawn, the contract related claims, Counts I and II, could have to do solely with defendant's alleged conduct in terminating plaintiff wrongfully without reference to issues regarding disability benefits or the manner in which those benefits should be meted out. *See Dedeaux,* 481 U.S. at 43, 107 S.Ct. at 1550–51 (explaining how the common law contract claims held preempted were based on the defendant's failure to provide " 'benefits under the insurance policy' "). For this reason, and considering the requirement that on a motion to dismiss the Court must construe the pleading in the light most favorable to the pleader, these Counts will remain intact subject to later disposition should it appear from the material facts developed through discovery that the claims relate to the employee benefit plan at issue. *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985) (ruling on a similar breach of contract claim and recognizing that there need be an inquiry into the focus of the state claim to determine whether it arises out of the administration of an employee benefit plan). Similar treatment shall be accorded this motion's focus on Count IV.

■ Count III is unequivocal in its application of a tort based claim to the maladies occasioned by the alleged mishandling of a request for information regarding benefits under the plan at issue. This Count embodies a claim for intentional infliction of emotional distress, stating: "Parisi alleges that Hampshire knew or should have known that by its actions in wrongfully denying long term disability benefits to him that emotional distress was the likely result of this conduct, that said conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." Justice

O'Connor faced a similar claim in *Dedeaux,* where she identified the issue as whether ERISA "preempts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan." 481 U.S. at 43, 107 S.Ct. at 1550–51. The Court answered this question affirmatively, resulting in, *inter alia,* the evisceration of Dedeaux's claim for damages for mental and emotional distress. *Id.* at 48, 107 S.Ct. at 1553; *see also Russell v. Massachusetts Mutual Life Insurance Co.,* 722 F.2d 482, 487–88 (9th Cir.1983) (recognizing that an emotional distress claim based on the handling of a claim for disability benefits was preempted); *Folz v. Marriott Corp.,* 594 F.Supp. 1007, 1020 (E.D.Missouri 1984) (same). Applying this precedent to plaintiff's claim in Count III which is clearly based on part of the benefit claim processing procedure, the Court is compelled to hold that this claim is preempted.[2]

*B. Lack of Legal Sufficiency in Counts I through V*

■ Defendant posits an alternate method for disposing of these claims, arguing that even if the claims enunciated in Counts I through IV are not preempted they fail to state a claim under ERISA as they would allow for extra-contractual damages, supposedly forbidden under *Drinkwater v. Metropolitan Life,* 846 F.2d 821 (1st Cir.1988). Yet, defendant assumes too much with this argument. It appears as noted in the discussion above that plaintiff may have made out valid pendent state common law claims, seeking relief based on facts having nothing to do with defendant's conduct regarding the employee benefit plan. Also, *Drinkwater* qualifies its holding regarding extra-contractual damages, not forms of remedy, i.e., equitable, declaratory or monetary (legal), with the recognition that its point of authority, *Massachusetts Mutual Life Insurance Co. v. Rus-*

*sell,* 473 U.S. 134, 157, 105 S.Ct. 3085, 3098, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring), " 'expressly reserve[d] the question whether extra-contractual damages might be one form of "other appropriate relief" under [1132(a)(3) ].' " 846 F.2d at 824–25; *see also,* 29 U.S.C. § 1132(c)(1) (allowing the court to "order such other relief as it deems proper.").

■ Defendant also contends that despite its alleged failure or refusal to provide plaintiff with the forms necessary to process his claim for the plan's disability benefits, defendant's letter to plaintiff giving the reasons for the denial of his claim is all that is required. The alleged fact of plaintiff's ultimate success in obtaining a disability determination from the disability insurance company after defendant had finally supplied the appropriate application form belies defendant's contention that defendant's initial, apparently erroneous, denial was all that was required. More to the point, 29 U.S.C. § 1132(c)(1)(B) requires only that the plan administrator have either failed or refused to supply requested information. The complaint's mention and attachment of defendant's letter denying plaintiff's request based on articulated reasons does not detract from plaintiff's having made out a claim under the statute for defendant's failure or refusal to comply with a request for information. *Id.*

Defendant cites no authority and research reveals none supporting defendant's position that upon a request for the necessary forms to apply for long term disability benefits, a plan administrator need only reply with a letter stating reasons supporting the applicant's ineligibility. A law or decision allowing such deviation from the dissemination of information mandated under this law would appear severely inimical to the disability application process.

■ Finally, defendant submits that plaintiff's claims for personal injury in-

---

**2.** The Court points out that the relevant statute concerning the plan administrator's requirement to supply requested information does allow the Court to "order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1). Upon submission of evidence the Court shall consider this language and its implications for recovery of a nature similar to that aimed at with Count III. Also, damages for emotional distress are recoverable under 29 U.S.C. § 1109. *Russell,* 722 F.2d at 490.

volve injuries which arose out of, and in the course of, his employment and are therefore barred by the exclusivity provision of the Workers' Compensation Act. Mass. Gen.Laws ch. 152, § 24. It appears well settled that claims for personal injury including emotional distress resulting from employment termination, wrongful or otherwise, are precluded by this exclusivity provision. *Foley v. Polaroid Corp.*, 381 Mass. 545, 548–52, 413 N.E.2d 711, 714–15 (1980); [3] *Tenedios v. Wm. Filene's Sons Company, Inc.*, 20 Mass.App. 252, 255, 479 N.E.2d 723, 726 (1985); *Bertrand v. Quincy Market Cold Storage & Warehouse*, 728 F.2d 568, 572 (1st Cir.1984). For this reason, plaintiff's claims for physical and emotional injury in Counts I and II shall be dismissed. *But see,* footnote 2, *supra.*

### IV.

For all of the foregoing reasons, the Court shall ALLOW in part, and DENY in part, defendant's motion to dismiss. Count III is dismissed in its entirety, whereas Counts I and II are dismissed only insofar as they allege personal injury claims barred by the Workers' Compensation Act in the manner described above. In all other respects, Counts I, II, IV and V shall remain intact.

It is So Ordered.

---

**3.** Bearing on Count IV, *Foley* also recognized that "alleged violation of the employee's civil rights is not a 'personal injury arising out of and in the course of ... employment' which would be compensable under the act." 413 N.E.2d at 716. For this reason, the claim for this type injury in this Count shall stand.