**Thomas L. LENNON, Plaintiff,**

v.

**Paul V. WALSH, et al., Defendants.**

**Civ. A. No. 88–1843–K.**

United States District Court,
D. Massachusetts.

July 8, 1992.

Albert S. Robinson, Grindle, Robinson & Kertzman, Wellesley, Mass., for plaintiff.

Paul F. Kelly, Shelley B. Kroll, Segal, Roitman & Coleman, Gabriel O. Dumont, Jr., Dumont and Morris, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Plaintiff brings this action for intentional infliction of emotional distress, violation of the Labor Management Reporting and Disclosure Act ("LMRDA"), and violation of the Employee Retirement Income Security Act ("ERISA") against defendants Paul Walsh, Construction Teamsters Health and Welfare Fund ("the Fund"), Teamsters Local 379 Health Services Plan ("the Health Services Plan"), and Construction Teamsters Health and Welfare Fund Staff Pension Plan ("Staff Pension Plan"). Now before the court are the Fund and Plan defendants' motion to dismiss the third-amended complaint (Docket No. 55, filed April 27, 1992) and a supporting memorandum (Docket No. 56, filed April 27, 1992), plaintiff's opposition (Docket No. 58, filed May 28, 1992), and the Fund and Plan defendants' reply (Docket No. 61, filed June 5, 1992). For the reasons that follow, the Fund and Plan defendants' motion to dismiss is allowed in part and denied in part.

### I. Plaintiff's Complaint

From 1967 until July 30, 1986, plaintiff served the Fund and Plan defendants in various capacities. Plaintiff was the Administrator of the Fund (1967–1986), Administrator of the Health Services Plan (1984–1986), Union Trustee/Secretary–Treasurer of the Fund (1984–1985), and Union Trustee/Secretary–Treasurer of the Health Services Plan (1984–1985). Plaintiff was also Vice–President of Local 379 (1971–1987).

In January of 1985, Vinnie Miller, President of Local 379, proposed to have the position of Principal Officer elected by the union membership. At that time the position was given to the person then currently serving as Secretary–Treasurer of Local 379. In January of 1985, defendant Walsh was the Secretary–Treasurer. Plaintiff campaigned in favor of Miller's proposal.

Two days after Miller made the proposal the Executive Board of Local 379 ("Executive Board") passed a motion to remove both Lennon and Miller as Trustees of the Fund and the other funds on which they were serving at that time. Plaintiff alleges that defendant Walsh initiated the Executive Board's action. Miller and Walsh then "appealed" the Executive Board's decision to the union membership. On March 3, 1985, the membership voted to reject the Executive Board's decision to remove plaintiff and Miller. According to plaintiff, Walsh then appealed the membership's rejection of the Executive Board's decision to the Joint Council. The Joint Council affirmed the Executive Board's decision to remove plaintiff and Miller. At that time defendant Walsh was a member of the Joint Council.

Plaintiff further alleges that after successfully securing plaintiff's removal as trustee, defendant Walsh began to "harass, intimidate and otherwise impose considerable pressure on plaintiff in an effort to remove him, either directly or indirectly, from all of the other positions of authority and responsibility which he had had in The Fund and in the Local." In particular, plaintiff alleges that defendant Walsh got the Fund's Board of Trustees to meet without plaintiff being present and to demand an accounting from plaintiff. Further, plaintiff contends that Walsh engineered the decision of the Board of Trustees in June of 1985 to remove plaintiff as Secretary/Treasurer of the Fund, and the Board's decision on July 23, 1986 to terminate plaintiff's employment as Administrator of the Fund. He also alleges that Walsh is responsible for the decision of the Board of Trustees of the Health Services Plan to remove plaintiff as Administrator.

According to plaintiff's complaint, Walsh continued to retaliate against plaintiff by attempting to prevent plaintiff from obtaining his medical, disability, and other health and welfare benefits, as well as to prevent plaintiff's withdrawal and rollover of his vested pension rights on disability. He also claims that Walsh improperly attempted to raise plaintiff's union dues, refused plaintiff's tender of dues, and then attempted to remove plaintiff from union membership by issuing plaintiff an involuntary withdrawal card on June 30, 1987. As a result of the issuance of the involuntary withdrawal card, plaintiff was removed as Vice–President of the Local. Plaintiff claims that he suffers from a post-traumatic stress disorder that has left him totally disabled as a result of Walsh's campaign against him.

## II. Legal Standard

■ On a motion to dismiss the court "must accept all well-pled factual averments as true, and draw all reasonable inferences therefrom in appellants' favor". *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). In so construing the complaint, however, the court shall "eschew any reliance on bald assertions [and] unsupportable conclusions...." *Id.* (citations omitted). The court may dismiss the plaintiff's claims only if the complaint presents no set of facts that could support a recovery. *Id.*

## III. Intentional Infliction of Emotional Distress

As a preliminary matter, I note that in several instances plaintiff's complaint states a claim against Walsh in his capacity as Trustee of the Fund or Health Services Plan in one Count and then makes the same claim in another Count directly against the Fund or Plan. Both parties agree that making a claim against Walsh in his capacity as Trustee of the Fund or Plan is just another way of making a claim against the Fund or Plan directly. Accordingly, the court will treat claims against Walsh in his capacity as Trustee as claims directly against the Fund or Plan.

### A.

■ Plaintiff alleges that he suffered severe emotional distress as a result of Walsh's successful efforts to have plaintiff removed as Secretary–Treasurer and Administrator of the Fund and Health Services Plan. The Fund and Plan move to dismiss plaintiff's intentional infliction of emotional distress claims against them that

arise out of plaintiff's removal from his positions with the Fund and Plan on the ground that under Massachusetts law such emotional distress claims against one's employer or former employer are barred by the exclusivity provision of the Massachusetts workers' compensation law. *See* Mass.Gen.L. ch. 152, § 24.

■ Massachusetts workers' compensation law provides that an employee waives his right of action at common law with respect to injury compensable under the workers' compensation law unless at the time the employee begins his employment the employee notifies the employer that he is reserving his right of action at common law. *See* Mass.Gen.L. ch. 152, § 24; *see also* Mass.Gen.L. ch. 152, § 26 (providing that an employee is entitled to workers' compensation for a "personal injury arising out of and in the course of his employment"). "It appears well settled that claims for personal injury including emotional distress resulting from employment termination, wrongful or otherwise, are precluded by this exclusivity provision." *Parisi v. Trustees of Hampshire College,* 711 F.Supp. 57, 63 (D.Mass.1989) (citing *Foley v. Polaroid Corp.,* 381 Mass. 545, 548–52, 413 N.E.2d 711, 714–15 (1980)); *see also Albanese's Case,* 378 Mass. 14, 389 N.E.2d 83, 84 (1979) (holding that an employee may be compensated under the workers' compensation law for severe emotional distress). The Fund and Plan defendants contend that because plaintiff's emotional distress claims against them arise solely from the removal of plaintiff from his positions with the Fund and Plan, his injuries arose out of his employment and thus are barred by the exclusivity provision.

Plaintiff makes three arguments in response to defendants' contentions. First, plaintiff contends that the exclusivity provision does not bar his claims for intentional infliction of emotional distress because his injuries did not arise from a *bona fide* personnel action. Second, he argues that emotional distress claims are not barred by the exclusivity provision if the tortious conduct is outside the scope of the co-employ-

ee's employment and not related to the employer's interest.

Plaintiff's response is unavailing. First, the fact that plaintiff alleges he was removed from his employment for an improper reason does not take his claim outside the scope of the workers' compensation law. As the court stated in *Parisi,* claims for "emotional distress resulting from employment termination, *wrongful or otherwise,* are precluded by [the] exclusivity provision." *Parisi,* 711 F.Supp. at 63.

■ Second, plaintiff's alternative contention that Walsh was acting beyond the scope of his trustee duties in engineering plaintiff's dismissal proves too much. If, indeed, Walsh was acting outside the scope of his authority as trustee for the Fund and Health and Services Plan in securing the dismissal of plaintiff, then the Fund and the Plan cannot be liable for Walsh's intentional torts. Under Massachusetts law an employer or principal will not be held liable for the intentional tort of its employee or agent (1) if the employee or agent was acting from purely personal motives and not in furtherance of the employer or master's interest or (2) the employee or agent was not acting within the scope of his duties. *See e.g., Miller v. Federated Department Stores, Inc.,* 364 Mass. 340, 304 N.E.2d 573, 580 (1973).

Thus, plaintiff's claims for intentional infliction of emotional distress against the Fund and the Plan that arise from the removal of plaintiff from his positions with the Fund and the Plan are barred by the workers' compensation law exclusivity provision if defendant Walsh was acting within the scope of his employment with the Fund and Plan in allegedly securing plaintiff's dismissal. On the other hand, if Walsh was acting beyond the scope of his authority, the Fund and Plan cannot be liable for Walsh's intentional torts against plaintiff. Accordingly, plaintiff's claims for emotional distress arising from his termination of employment with the Fund and Plan in Counts II, IV, VI, and VIII must be dismissed.

### B.

■ Plaintiff also makes claims for intentional infliction of emotional distress arising from the Fund and Plan defendants' handling of plaintiff's employee benefit claims. In particular, he alleges that he suffered emotional distress when the Fund and the Heavy Haulers Fund wrongfully denied him medical benefits (Counts II and IV), and when the Staff Pension Plan wrongfully denied his request for distribution of his vested pension on disability (Counts V and IX).

Plaintiff's claims for emotional distress arising from the denial of benefits are preempted by ERISA. ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). In *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that claims arising from a denial of benefits "relate to" an employee benefit plan and are therefore preempted by ERISA. *Id.* at 47, 107 S.Ct. at 1552. Thus, plaintiff's claims for intentional infliction of emotional distress that arise from the Fund and Plan defendants' alleged wrongful denial of benefits are preempted by ERISA and must be dismissed.

### IV. LMRDA Claims

■ Plaintiff makes claims against the Fund and the Health Services Plan for violation of Title I of the LMRDA, 29 U.S.C. § 412 (Counts XI, XII, XVI, and XVII). Section 101 of the LMRDA guarantees that "[e]very member of a labor organization shall have equal rights and privileges within such organization" to nominate, vote, attend meetings and participate and vote at such meetings. 29 U.S.C. § 411(a)(1). That section also guarantees the rights of every labor organization member to "meet and assemble freely with other members" and to "express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). Section 102 provides that "[a]ny person whose rights secured [by Section 101] have been infringed" may bring a civil action. 29 U.S.C. § 412.

Plaintiff alleges that the Fund and the Health Services Plan violated his rights secured by Section 101 of the LMRDA by removing him from his employment as Administrator of the Fund and Administrator of the Plan. In particular, he claims that the Fund and Health Services Plan are for LMRDA purposes "union entities" and that these "union entities" directly interfered with his rights to be a member of a labor organization in the following manner:

Plaintiff was out on a withdrawal card, not because such card was voluntarily taken ..., but because the card was issued to plaintiff involuntarily by Walsh, after the elimination by the Local 379 Executive Board of the minimum dues category which had permitted a person unemployed, laid off, or disabled to continue active membership on a reduced fee basis. That involuntary withdrawal card issuance was said grounded on Plaintiff's not having been employed in the craft for six months. Plaintiff's not having been employed in the craft for six months was, in turn, factually grounded on his having been terminated *seriatim* from the three union trust funds that he had administered ... and on his disability preventing him from "going back on the truck."

Plaintiff's opposition at p. 18.

In *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Supreme Court held that discharged union employees in policymaking positions did not have a cognizable cause of action against the union pursuant to Title I of the LMRDA. The Court emphasized that the purpose of Section 101 of the Act is to protect union membership—not union employment. The discharge of the union employees in retaliation for their union election activities was only an indirect interference with their membership rights, and thus not actionable under Title I. *Id.* at 439–41 & n. 10, 102 S.Ct. at 1872 & n. 10.

The *Finnegan* Court did not determine whether the discharge of a *nonpolicymaking* union employee in retaliation for union election activities is actionable under Title I. This question was answered by the Sec-

ond Circuit in a case factually similar to the case now before this court. In *Franza v. International Bhd. of Teamsters, Local 671*, 869 F.2d 41 (2d Cir.1989), the plaintiff brought suit against the union alleging that he had been discharged from his position as Field Auditor of the Local's Health Services and Insurance Plan in retaliation for supporting the losing candidate in the recent union election. In holding that the plaintiff could not maintain a claim under Title I, the court observed that

> *Finnegan* teaches that it is not a member's *employment by the union* that is protected by Title I; rather it is his *membership in the union* that is safeguarded. Were it otherwise, § 102 would be transformed into a genie offering lifetime job security because Title I rights would be backed by a right to bring an action for any loss of union employment.

*Id.* at 47.

The court noted that to hold that the discharged employee could state a LMRDA claim would ignore the fact that "[d]irect interference with Title I rights is required to state a cognizable § 102 claim." *Id.* The court concluded that the test of whether a claim by a discharged union employee is cognizable under Title I "is not whether the employee is or is not in a policymaking position, rather the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status." *Id.* at 48.

Plaintiff's claims against the Fund and the Health Services Plan pursuant to the LMRDA must fail. Even assuming that plaintiff can prove that the Fund and Health Services Plan are union entities for LMRDA purposes, plaintiff has not alleged any facts that would support a conclusion that the Fund and the Plan's action in dismissing him from his employment directly infringed his membership rights. Plaintiff admits that immediately following his termination he was able to maintain his union member status and all its rights and privileges. His membership rights were not infringed until the Executive Board voted to eliminate minimum dues status almost a year after plaintiff lost his employment with the Fund and the Plan. Indeed, plaintiff's complaint states that he remained Vice–President of the Local until June of 1987. Thus, it was the action of the Local's Executive Board—not the action of the Fund or the Plan—that directly led to plaintiff's loss of union membership rights and privileges. Accordingly, plaintiff's claims against the Fund and the Health Services Plan pursuant to section 102 of the LMRDA must be dismissed.

Plaintiff's LMRDA claims in Counts XIII and XVIII against the Staff Pension Plan must be dismissed for the same reasons. Plaintiff claims that the Staff Pension Plan's alleged wrongful denial of his pension benefits directly interfered with his union membership rights because the denial of benefits was part of a concerted effort to quash his dissent. If this court were to adopt plaintiff's reasoning, however, every person denied benefits by a union fund or plan might assert a cause of action under the LMRDA. Moreover, allowing plaintiff's claim would eviscerate the requirement that to state a claim under Title I of the LMRDA the plaintiff must allege that the challenged action directly infringed the plaintiff's union membership rights. Accordingly, plaintiff's LMRDA claims against the Staff Pension Plan must be dismissed.

### V. ERISA Claims

In Counts XIX and XX plaintiff makes an ERISA claim against the Fund for improper denial of benefits. In addition to the loss of benefits, plaintiff requests relief in the amount of $100 per day as is provided in 29 U.S.C. § 1132(c). Plaintiff makes similar ERISA claims against the Staff Pension Plan in Counts XXI and XXII.

The Fund and Staff Pension Plan defendants move to dismiss the ERISA claims against them on the ground that plaintiff has failed to give the Fund "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Cash Energy, Inc., v. Weiner*, 768 F.Supp. 892, 897 (D.Mass.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In particular, defendants assert that, although plaintiff requests relief pur-

suant to 29 U.S.C. § 1132(c) (which provides for up to a $100 a day penalty in the event that an administrator fails to give a participant COBRA notice or fails to comply with a request for information) plaintiff has not even alleged that the Fund or Plan defendants ever failed to provide plaintiff with benefit information.

Although plaintiff's complaint does not specify exactly how the Fund and the Staff Pension Plan violated ERISA with respect to plaintiff's claims for benefits, I conclude that defendants have been given fair and adequate notice of plaintiff's ERISA claims in compliance with Federal Rule of Civil Procedure 8(a). Plaintiff's third-amended complaint alleges that Walsh attempted to stop plaintiff "from obtaining his medical, disability, and other health and welfare benefits [and] to try to stop [plaintiff's] withdrawal and rollover of his vested pension rights on disability." Complaint at ¶ 9. The complaint further alleges that defendant Walsh was involved in the Fund's and Plan's delaying and failing to respond to plaintiff's requests about benefits, imposition of improper conditions, and interferences with and denials of benefits and rights. *Id.*

Moreover, plaintiff more fully explains his ERISA claims in his opposition to defendants' motion to dismiss and even refers defendants to specific portions of plaintiff's deposition testimony. For example, plaintiff states that the Staff Pension Plan improperly denied him the lump sum distribution of benefits due to him under the Plan. Plaintiff's Opposition at p. 22. He also gives a precise explanation of the Staff Pension Plan provisions he claims the Plan defendant has violated. *Id.* at 23–24.

Accordingly, I conclude that plaintiff has alleged sufficient facts to survive defendants' motion to dismiss. It may be that after the completion of discovery plaintiff will not be able to present evidence to support his allegations of ERISA violations. That is a matter, however, that must be resolved on a motion for summary judgment or at trial.

### VI. Summary

Plaintiff's claims for intentional infliction of emotional distress against the Fund, Health Services Plan, and Staff Pension Plan (Counts II, IV, V, VI, VIII, IX) must be dismissed for failure to state a claim. In addition, plaintiff's LMRDA claims against the Fund, Health Services Plan, and Staff Pension Plan (Counts XI, XII, XIII, XVI, XVII, & XVIII) must be dismissed because plaintiff has failed to allege any set of facts that would permit a finding that the actions of the Fund and Plan defendants led directly to an infringement of plaintiff's union membership rights. I also conclude, however, that plaintiff's ERISA claims against the Fund and the Staff Pension Plan (Counts XIX, XX, XXI & XXII) should not be dismissed.

### ORDER

For the foregoing reasons it is hereby ORDERED:

The Fund and Plan defendants' motion to dismiss (Docket No. 55) is allowed in part and denied in part:

(1) Defendants' motion to dismiss is allowed as to Counts II, IV, V, VI, VIII, IX, XI, XII, XIII, XVI, XVII, XVIII; and

(2) Defendants' motion to dismiss is denied as to all other counts against the Fund and Plan defendants.