Cowin, J.
This is an action by plaintiff Karen Bozek (Bozek) against her former employer, Mediq Mobile X-Ray & EKG (Mediq or the company), and its president, Laurence Smith (Smith), to recover for injuries sustained from the termination of her employment relationship with Mediq. Bozek asserts claims of tortious interference with contractual relations against Smith (Count I); intentional infliction of emotional distress against Mediq and Smith (Count II); wrongful termination against Mediq (Count III); and breach of contract against Mediq (Count IV). Defendants have moved for summary judgment on all counts. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
The following facts, as contained in the parties’ submissions, are undisputed. Bozek was first employed by Mediq on February 24, 1986 as an employee at-will.[2] In 1987, Bozek was made a vice-president of Mediq. In this position, she assumed responsibility for Mediq’s Westwood office. Her duties included performing billing and customer service operations and administering the Management Information System (MIS). From 1986 until May 1994, Bozek reported to Smith, who, as president of the company, had authority to hire and fire employees.
In May 1994, the Federal Bureau of Investigation (FBI) launched an investigation into Mediq’s billing practices. Subsequently, Mediq agreed to a $2.1 million settlement for submitting out-of-state Medicare reimbursement requests to Pennsylvania Blue Shield. Also, Smith pled guilty in 1995 to one count of misprision in connection with Mediq’s billing practices.
The court accepts the remaining facts alleged by Bozek as true for purposes of reviewing the instant summary judgment motion.[3] In late May 1994, Smith informed Bozek of the above-mentioned FBI investigation. He encouraged Bozek to use the attorney Mediq had hired in regard to this investigation, but informed Bozek that she could hire her own counsel if she wished. Bozek decided to retain her own attorney.
In July 1994, the FBI contacted Bozek. At about this time, Smith told Bozek that the FBI had contacted other employees and that Bozek should be honest in answering the FBI’s questions if she were contacted. In August 1994 and on a few other occasions, Bozek voluntarily met with the FBI and answered various questions concerning Mediq’s billing practices. Bozek claims that Smith was aware of Bozek’s cooperation with the FBI because the FBI possessed certain documents and information which only could have been supplied by a high-level employee such as Bozek.
After the FBI investigation had. progressed, although Bozek retained her title as a vice-president, her job duties were altered. For example, in June 1994, Bozek’s responsibilities for billing were reassigned and Bozek was instructed to report directly to Steve Manly (Mediq’s controller who also reported to Smith); in September 1994, Bozek was stripped of her MIS duties; and in October 1994, Bozek was told that she would no longer be in charge of customer service operations. Also in October 1994, Bozek was assigned responsibility for special projects and physical maintenance in the Westwood office. Bozek also claims that employees at Mediq told her that they believed that they should cease associating with her.
In November 1994, Bozek commenced therapy for depression resulting from her work environment at Mediq. Finally, on February 22, 1995. Bozek followed her therapist’s recommendation that she remain at home and not return to work at Mediq. Her employment with Mediq was never terminated by the company.[4] Bozek claims that Smith acted against her both for his own personal financial gain and in retaliation for her cooperation with the FBI investigation.
DISCUSSION
Summary judgment is granted if there are no issues of material fact and if the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. at 17. Conclusory assertions and factual allegations not based upon personal knowledge will not suffice to support or defeat a motion for summary judgment. See Key Capital Corp. v. M&S Liquidating, 27 Mass.App.Ct. 721, 727-28, review denied, 406 Mass. 1101 (1989).
*190 I. Tortious Interference with Contractual Relations
In Count I of her complaint, Bozek alleges that Smith tortiously interfered with Bozek’s contractual relations with Mediq. Bozek claims that Smith maliciously set out to constructively discharge Bozek because he received additional compensation based upon Mediq’s annual financial performance, that is, if Smith met the company’s annual budget, then he would receive a bonus based on a percentage of his salary.[5] Bozek maintains that Smith should incur personal liability for tortious interference because he did not act to further Mediq’s goals, but rather acted out of his own personal and financial motives pursuant to his bonus arrangement with Mediq. The defendants contend that Smith, as an officer of Mediq could not interfere with Mediq’s own contract with Bozek and therefore cannot be liable.
To sustain a cause of action for tortious interference with contractual relations, Bozek must establish that: (1) Bozek had a contract or business relationship with Mediq; (2) Smith knowingly induced Mediq to breach its contract with Bozek; (3) Smith’s interference was improper in motive or means; and (4) Bozek was thereby harmed. Draghetti v. Chmielewski 416 Mass. 808, 816 (1994). In the context of employment disputes, an at-will employee, such as Bozek, may assert a tortious interference with contractual relations claim against a supervisor.[6] The at-will employee need not establish the existence of an actual employment contract, but instead may demonstrate a business relationship with her employer or a sufficient expectation of continued employment. See King v. Driscoll, 418 Mass. 576, 581 (1994) (trial judge ruled that certain directors were liable for interfering with employee’s at-will relationship with company); Owen v. Williams, 322 Mass. 356, 361-62 (1948) (employee need only show existing or probable future business relationship with employer to sustain unlawful interference claim); Clement v. Rev-Lyn Contracting Co., 40 Mass.App.Ct. 322, 324 (1996) (at-will employee must ■show that supervisor interfered with employee’s business relationship with employer). By virtue of her employment with Mediq, Bozek has established that she had a business relationship with Mediq and therefore, may assert a tortious interference claim against Smith.
Because supervisors are privileged to interfere,[7] Smith is not liable for any interference unless Bozek can show that Smith acted out of malice. Clement v. Rev-Lyn Contracting Co., 40 Mass.App.Ct. at 325. A plaintiff is not required to produce direct evidence of malice. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981). Rather, adducing facts which warrant a juiy to reasonably infer malice may suffice. Id. Motivation from personal financial gain, however, does not by itself satisfy the malice requirement. King v. Driscoll, 418 Mass. 576, 587 (1994).
Determining what constitutes malice in this context is sometimes difficult. The cases of Gram v. Liberty Mut Ins. Co., 384 Mass. 659 (1981), King v. Driscoll, supra, and Draghetti v. Chmielewski, 416 Mass. 808, 816-17 (1994) appear, however, to establish the standard that there must be personal ill-will or hostilify towards the plaintiff. Honest belief that a supervisor’s conduct furthers the employer’s interest is not sufficient to constitute malice. Nor is ambition and a desire for personal gain. In Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993), the Supreme Judicial Court referred to the required showing as a “spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Bozek has failed to present evidence of a spiteful, malignant purpose. She simply has produced no evidence of any personal ill-will or hostilify on the part of Smith. Further, there is no evidence that even establishes how Smith stood to gain financially from any change in Bozek’s job responsibilities.
Even if Bozek’s bald claims are accepted, Bozek has not set forth any evidence to establish that Smith acted with malice as malice is defined in this context. Bozek’s claims that Smith changed her job responsibilities and told other employees to cease associating with her, even if true, were both, according to Bozek, motivated by Smith’s desire to benefit financially. Assuming that this contention is true, this type of motivation is insufficient to satisfy the malice requirement. See King v. Driscoll, 418 Mass. at 587 (conduct motivated by personal financial gain does not satisfy malice requirement). Accordingly, Smith is entitled to summary judgment on Count I of Bozek’s complaint.
II. Intentional Infliction of Emotional Distress
In Count II, Bozek asserts claims of intentional infliction of emotional distress against both Smith and Mediq. To establish a claim of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of the conduct; (2) the defendant’s conduct was extreme and outrageous; (3) the defendant’s actions caused the plaintiffs distress; and (4) the plaintiff sustained severe emotional distress. Sena v. Commonwealth, 417 Mass. 250, 263-64 (1994); Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
The defendants argue that the Workers’ Compensation Act (Act), G.L.c. 152, §24,[8] bars this claim. See Lennon v. Walsh, 798 F.Supp. 845, 848 (D. Mass. 1992) (exclusivity provision bars claims against employer/master for emotional distress arising out of wrongful employment termination); Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377, 378-80 (injuries occurring at work causing emotional distress are compensable under Act), review denied, 419 Mass. 1101 (1994). Bozek, citing O’Connell v. Chasdi, 400 Mass. 686 (1987), maintains that no bar exists as to Smith because Smith’s conduct fell outside the scope of his employment and was not in furtherance of *191 Mediq’s business. Bozek offered no explanation as to why this claim is not barred as to Mediq.
It is unnecessary to determine whether the Act bars recovery here. Even if it does not, Bozek has not presented evidence to warrant a jury in concluding that Smith’s acts were extreme and outrageous. Bozek contends that by stripping her of all her job responsibilities after years of excellent work performance and by forcing her to resign in retaliation for cooperating with the FBI’s investigation, Smith committed an extreme and outrageous act. To impose liability for intentional infliction of emotional distress, a plaintiff must show that the defendant’s conduct was extreme and outrageous in character beyond all possible bounds of decency, and regarded by a civilized community as utterly intolerable. Agis v. Howard Johnson Co., supra, at 144-45. If Bozek had evidence that Smith forced her to quit either as retaliation for her cooperation with the FBI or to gain personal financial advantage and that he harassed her to the point she was constructively discharged, Bozek would have established extreme and outrageous conduct sufficient to constitute a case of intentional infliction of emotional distress. But there is no evidence here of that type of inappropriate selfish action unrelated to job performance.
In an attempt to support her intentional interference claim, Bozek alleges that Smith instructed other employees of Mediq to stop associating with Bozek. Assuming that such action by Smith could be characterized as extreme and outrageous. Bozek produced no evidence to support her bare allegation. On the contrary, Bozek produced deposition testimony of one employee, Catherine Keeran, who stated that other workers, namely Sheryl Parkhouse and Paul Trabold, instructed Keeran to stop associating with Bozek. There is no evidence this instruction emanated from Smith. Bozek also produced deposition testimony from other employees who stated that they heard rumors and were under the impression that they were not to associate with Bozek. These employees, however, did not implicate Smith as the source of such rumors or impressions. No evidence appears in the record to submit Bozek’s claim that Smith was the person who instructed others to cease associating with Bozek.
Further in support of her intentional infliction of emotional distress count, Bozek claims that after years of excellent work performance evaluations, Smith stripped Bozek of all her job duties, specifically her billing, MIS, and customer service responsibilities. In her deposition, however, Bozek testified that she did not mind handing over her billing responsibilities to Maniy because she felt that her responsibilities involved “more work than one person could handle.” Bozek also testified that Manty removed Bozek’s MIS responsibilities by hiring another individual to assume these responsibilities. Bozek provided no evidence, however, that Manty took this action at Smith’s direction. Additionally, Bozek testified that instead of her former duties, she was given the responsibility for special assignments and physical maintenance in Westwood. Admittedly, Bozek’s salary, title and office accommodations remained unchanged.
In short, Bozek’s claim that Smith caused other employees to stop associating with her are not supported by the evidence. The evidence that Smith changed Bozek’s job responsibilities without more, does not, as a matter of law, constitute extreme and outrageous conduct. A jury would not be warranted in making the findings necessary to support a conclusion of tortious interference. Consequently Bozek cannot sustain a claim of intentional infliction of emotional distress against Smith.
Since Mediq has no liability here other than that which would derive vicariously from Smith, Bozek cannot sustain a claim of intentional infliction of emotional distress against Mediq either. Accordingly, the defendants’ motion for summary judgment with respect to Count II is allowed.
III. Wrongful Termination
Bozek claims that Mediq constructively discharged her for cooperating with federal authorities in violation of public policy. An employer may terminate an employee at will without notice “for almost any reason or for no reason at all.” GTE Products Corp. v. Stewart, 421 Mass. 22, 26 (1995); Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). At-will employees, however, may seek redress against employers who terminate their employment in violation of public policy. King v. Driscoll, 418 Mass. 576, 582 (1994); Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149 (1989). Although the public policy exception has been narrowly construed, Massachusetts courts have recognized that a public policy violation may exist where an employee claims that discharge was motivated for cooperating with an ongoing criminal investigation. See GTE Products Corp. v. Stewart, 421 Mass. at 26 (whistleblowers may be entitled to protection under public policy exception); Flesner v. Technical Communications Corp., 410 Mass. 805, 810-11 (1991) (employee who had cooperated with Customs officials may sue for retaliatory discharge violative of public policy).
It is not necessary, however, to determine whether Bozek’s constructive discharge claim falls within the public policy exception. Before these considerations apply, a jury must be able to find that there was a constructive termination. See GTE Products Corp. v. Stewart, 421 Mass. at 33 (court need not decide whether employee’s allegations fell within public policy exception where employee failed to present sufficient evidence of constructive discharge). Bozek must first demonstrate a constructive discharge and she has not presented enough evidence to warrant a jury in so finding.
*192 Bozek’s evidence in support of her constructive discharge claim simply is not sufficient to warrant submission of the issue to a jury. As a matter of law, a jury could not find that Bozek had been constructively discharged on the record before me. The Massachusetts Supreme Judicial Court-recently employed the First Circuit’s standard for determining the existence of a constructive discharge. GTE Products Corp. v. Stewart, 421 Mass. at 34. To find a constructive discharge, “the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign.” Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977). This standard involves an objective evaluation of whether the employee’s expected working conditions were intolerable. GTE Products Corp. v. Stewart, 421 Mass. at 34 (citing Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1247 (1994) (adverse working conditions must be unusually aggravated or continuous before deemed intolerable)).
As a matter of law, the evidence that has been submitted of Bozek’s working conditions at Mediq do not amount to intolerable conditions supporting a constructive discharge claim. Although Bozek claims that she experienced a loss in job responsibilities, she conceded that she retained her title as vice-president, her former salary and the same office space. Further, Mediq gave Bozek. new responsibilities, including control over the Westwood office’s special projects and physical maintenance. Although Bozek may not have desired to assume these responsibilities, it cannot be said that her change of duties constituted intolerable working conditions.
Bozek also complains of feeling shunned by other employees, and asserts that Smith had instructed employees to cease associating with her. Bozek adduced no evidence showing that Smith issued such an instruction. However, as discussed above, Bozek did produce deposition testimony from some employees stating that they heard rumors from other employees to stop associating with Bozek and were under the impression that they would be shunned if they associated with Bozek. Only one witness, Catherine Keeran, in her deposition stated that workers Sheryl Parkhouse and Paul Trabold instructed Keeran to stop associating with Bozek. Mere rumors and vague impressions, unpleasant as they may be, do not establish an aggravated or continuous pattern of intolerable working conditions. Nor does one employee’s (Keeran) testimony that she was not to associate with Bozek constitute intolerable conditions which would cause a reasonable person to have felt compelled to resign.
In essence, Bozek has failed to adduce sufficient evidence to warrant a jury in concluding that she was constructively discharged. Accordingly, because no triable issue exists as to the constructive discharge claim, summary judgment is granted for the defendants on Count III.
IV. Breach of Contract
Bozek cúso asserts a claim for breach of contract against Mediq. An at-will employee may bring a cause of action based upon a breach of contract theory if the employee can establish that he was constructively discharged in violation of public policy. DeRose v. Putnam Management Co., 398 Mass. 205, 205, 210 (1986) (at-will employee may assert breach of contract where wrongfully discharged in violation of public policy). This cause of action however, is merely duplicative of Bozek’s wrongful termination claim asserted in Count III. The analysis required for both claims is identical, as is the result. Accordingly, the defendants are entitled to summary judgment with respect to Count IV.
ORDER
It therefore is ORDERED that the defendants’ motion for summary judgment is ALLOWED.

This fact was agreed upon by both parties at the hearing on the instant motion.

This is done as, even assuming all facts favorable to plaintiff, the defendants’ motion is allowed.

Uncertainty exists as to whether Bozek was discharged or even constructively discharged. See infra at Section III.

Bozek never sets forth how, if at all, Smith’s salary was affected by her own salary and/or her alleged discharge.

Bozek would not be able to assert a tortious interference with contractual relations claim against Mediq because an employer, as a matter of law, cannot interfere with its own employment relationship (contractual or at-will). Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 n.3 (1981). Bozek, however, has not made such an averment against Mediq.

The defendants claim that an officer of an employer cannot be liable for tortious interference with the employment relationship. However, the law is that a corporate officer may avoid liability only if the interference were privileged as part of his employment responsibilities. See, e.g., Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 273 (1977).

Section 24 provides, in pertinent part, that “[a]n employee shall be held to have waived his right of action at common law ... in respect to an injury that is compensable under this chapter, to recover damages for personal injuries ...”